STATE

v.

**Efrain OTERO.**

No. 2000–187–C.A.

Supreme Court of Rhode Island.

Jan. 24, 2002.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The defendant, Efrain Otero, has appealed a judgment of conviction of first-degree murder and carrying a pistol without a license in the shooting death of Teodoro Lara, claiming that the evidence presented at trial was not legally sufficient to support the jury's verdict of guilt beyond a reasonable doubt. For the reasons discussed herein, we affirm the convictions.

### Facts and Procedural History

On June 27, 1998, defendant shot and killed Teodoro Lara (Lara) in a Providence bar known as Edward's Social Tap (Edward's). A grand jury indicted defendant for murder, in violation of G.L.1956 § 11–23–1; for carrying a pistol without a license, in violation of G.L.1956 § 11–47–8; and for possession of a firearm after having been previously convicted of a crime of violence, in violation of § 11–47–5. The last count was dismissed at the close of the state's case.

The key issue at trial was whether defendant brought the gun to Edward's and shot Lara deliberately, with premeditation and malice aforethought, or whether Lara had the gun, and defendant accidentally shot Lara in an attempt to wrest the gun from him. The state presented both direct and circumstantial evidence in support of its case. Eyewitnesses to the incident, Jose Morel (Morel), Carlos Hernandez (Carlos), and Julito Hernandez, testified that Lara was playing pool when defendant entered the bar, approached Lara, and shots rang out. Carlos, who was tending bar in Edward's that night, testified that defendant, whom he called "the aggressor," came into the bar, "went to the back where [Lara] was," and "right away * * * shot the other one." Morel, who

was playing pool at the table next to Lara at the time of the shooting, testified that he saw something "silver, nickel color" in defendant's hand before he heard the gunshots.

A police officer, who arrived on the scene shortly after the shooting, testified that defendant opened the door to the bar, and when the officer "ordered him to show [the officer] his hands," defendant closed the door for "several seconds" before reopening the door, taking a step outside, and collapsing to the ground. On the floor of the bar, the police found a handgun that contained five empty bullet casings and one cartridge or "full bullet." The bullet casings matched the three bullets recovered from the victim's body, one from inside the victim's clothing, and one from the floor of the bar. An additional cartridge, of the same type as the others, was found in the rescue vehicle used to transport defendant to the hospital. No fingerprints were found on the gun.

Michael Sikirica, M.D. (Sikirica), deputy chief medical examiner for the State of Rhode Island, testified that Lara was shot five times: one bullet struck Lara in the face, passing through his left cheek; a second entered his left shoulder, punctured his heart, diaphram and left kidney and became lodged in the abdominal cavity; a third bullet entered his abdomen and became lodged in his pelvis, piercing the right iliac vein; a fourth traveled through his left hip and out through his buttocks; and a fifth bullet struck Lara in the left leg, remaining lodged in his calf. Sikirica described only one of the bullet wounds as "close range," that is, fired from "[w]ithin a foot to two feet." In addition, Sikirica testified that Lara had cuts on his hands that were "consistent with somebody who had their hand on the gun and wasn't the person shooting it," also referred to as "defensive wounds." During the struggle,

defendant also received a gunshot wound to the leg, apparently from one of the same bullets that injured Lara. Detective Robert Muir testified that defendant did not have a license to possess a firearm.

Maritza Alvarez, defendant's ex-wife, had been dating Lara for more than a year at the time of the shooting. At trial, she testified that defendant and Lara did not get along and that defendant had threatened to kill Lara. At the close of the state's case, defendant moved for a judgment of acquittal that was denied.

The defendant testified in his own defense. He admitted that he and Lara had argued on the day of the shooting, but insisted that he went to Edward's to play pool, not to confront Lara. He also admitted that he drank whiskey before arriving at Edward's, and hospital records revealed that defendant's blood alcohol level after the shooting was 0.17, a level in excess of the legal limit of 0.10 for operating a motor vehicle. According to defendant, Lara approached him in the bar, hit defendant with a beer bottle, and reached under his shirt for a gun. The defendant testified that he tried to grab the gun from Lara and shot him in the ensuing struggle. The defendant's girlfriend at the time of the shooting, Elizabeth Gomez, and a local business owner, Leonidas Medina (Medina), both testified that, in the past, Lara had threatened defendant with physical violence or death.

After closing arguments, the trial justice instructed the jury in respect to the gun charge, including instructions on active and constructive possession, and on the murder charge, including instructions on first- and second-degree murder, diminished capacity, and self-defense. The jury found defendant guilty of first-degree murder and carrying a pistol without a license, and the trial justice reaffirmed his denial of defendant's motion for a judgment of

acquittal. The defendant's motion for a new trial was denied, and he was sentenced to the mandatory term of life imprisonment on the murder charge, and to a suspended ten-year sentence on the gun charge, with ten years' probation to run consecutively to the sentence on the murder charge and to commence if defendant is released from his life sentence. This appeal followed. Additional facts will be developed as required in discussing the issues on appeal.

## Motion for a New Trial

On appeal, defendant argued that the trial justice erred in denying his motion for a new trial on the grounds that the evidence presented by the prosecution was not legally sufficient to establish defendant's guilt beyond a reasonable doubt. The defendant asked this Court to order a new trial or, in the alternative, to remand the case with directions that the Superior Court enter a judgment of acquittal.

The standard to be applied in evaluating a motion for a new trial is well established. "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994) (citing *State v. Marini,* 638 A.2d 507, 515 (R.I.1994)). If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied. *Marini,* 638 A.2d at 515–16; *State v. Clark,* 603 A.2d 1094, 1096 (R.I.1992). If, however, "the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered." *Clark,* 603 A.2d at 1096. In enunciating a ruling on a new-trial motion, "the trial justice need not refer to all the

evidence supporting the decision but need only cite evidence sufficient to allow this court to discern whether the justice has applied the appropriate standards." *Banach,* 648 A.2d at 1367. If this Court determines that "the trial justice has complied with the requisite procedure and articulated an adequate rationale for denying a motion for a new trial, that decision will be given great weight and will not be disturbed unless the trial justice 'overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong.'" *State v. Bleau,* 668 A.2d 642, 646 (R.I.1995) (quoting *Banach,* 648 A.2d at 1367).

In the instant case, the record revealed that the trial justice performed the requisite review carefully and completely and that he adequately articulated his reasons for denying defendant's motion. To start, the trial justice reviewed the testimony and physical evidence presented in the case and independently assessed the credibility of the witnesses. Next, he considered the evidence in light of the jury instructions that included instructions on first- and second-degree murder, diminished capacity, and self-defense, and he reached an independent conclusion about defendant's guilt:

> "The Court agrees with the jury verdict, having weighed and sifted the evidence in the manner similar to that of the jury, finding that the State's witnesses were indeed credible, that the sequence of events that they testified to were very much more probable than the scenario propounded by the defense, and the Court finds as a fact and believes as a matter of law that the jury did come to the correct conclusion based on the substantial circumstantial and substantive direct evidence in this case. The Court has no quarrel with the jury verdict."

Because the trial justice agreed with the jury verdict, he could have terminated the analysis at that point and denied defendant's motion for a new trial. However, he went on to find that "this is a case upon which reasonable minds can differ," given that "there was evidence on the record which the jury could have considered which may have led to an acquittal or at least a second degree finding by the jury, but they chose not to believe that theory." The trial justice then denied the new-trial motion:

> "So, the Court, in not substituting its opinion for that of the jurors but having made the analysis required by law, believes that the jury verdict was sound on the law and facts, that they followed the instructions that were given by the Court and review of the Court's instructions, indicated to the trial judge in this matter that the instructions were adequate and conformed to the law with regard to the charge before the Court at which the defendant was presented, and the Court is going to respectfully deny the motion for new trial on those grounds."

■ Having concluded that the trial justice performed the appropriate review in considering defendant's motion, we next consider whether the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong. *Bleau,* 668 A.2d at 646. The defendant argued on appeal that "the facts presented by the testimony in this case were not sufficiently conclusive on certain key issues," namely, (1) whether defendant brought the gun to the bar, and (2) whether defendant was the aggressor. With respect to the first issue, defendant pointed out that none of the state's witnesses testified to having seen a gun in defendant's hand, and moreover, no fingerprints were found on the gun, bullets, or shell casings. In essence, defendant argued that the lack of direct evidence on the issue of whether defendant brought the gun to the bar was fatal to the prosecution's case. The defendant's argument has ignored the well-settled rule in this jurisdiction that "[i]n attempting to establish defendant's guilt beyond a reasonable doubt, the state may rely entirely upon circumstantial evidence, as long as the totality of the circumstantial evidence presented to the finder of fact constitutes proof of guilt beyond a reasonable doubt." *State v. Hornoff,* 760 A.2d 927, 932 (R.I. 2000) (citing *State v. Diaz,* 654 A.2d 1195, 1202 (R.I.1995)); *see also State v. Caruolo,* 524 A.2d 575, 581 (R.I.1987).

In the instant case, there was ample circumstantial evidence to support a finding that defendant brought the gun to the bar and carried out a preconceived plan to kill Lara. The testimony of the three eyewitnesses, including Carlos's testimony that "everything was quiet" until defendant "came in, right away he came and shot the other one," and Morel's testimony that defendant had something "silver, nickel color" in his hands before shots were fired, all buttressed the state's theory "that Teodoro Lara was playing pool when defendant entered the bar, that defendant went straight to him without preamble, and that shots were fired before the two men ever came into contact." Additionally, uncontroverted forensic evidence showed that, of the five bullets that wounded and killed Lara, only one was fired from close range, and Lara had defensive wounds on his hands consistent with Lara trying to grab the gun from defendant. A live bullet, matching the bullets found on the scene and in the victim's body, was found in the rescue vehicle that carried defendant to the hospital. A member of the rescue team testified that he cleaned out the vehicle between runs, leading to an inference that defendant brought to the bar not only the loaded

gun, but extra ammunition as well. Medina, a witness for the defense, testified that based on the difference in size between the two men, defendant would have lost a hand-to-hand, physical fight with Lara. Finally, although there were no fingerprints found on the gun, the fact that defendant retreated into the bar for "several seconds" after a police officer ordered him to "show [him] his hands" supported an inference that defendant took that opportunity to wipe the gun clean and drop it on the floor where it was later found by police.

Indeed, the totality of the evidence presented by the prosecution in this case surpasses the quantum of evidence presented in previous cases in which this Court has found sufficient evidence for conviction. *See, e.g., State v. Mendoza,* 709 A.2d 1030, 1036–38 (R.I.1998) (holding that second-degree murder conviction was supported by single eyewitness identification of the defendant as the shooter and by bullets similar to those that killed victim found in the defendant's pantry drawer, despite contrary testimony of two other eyewitnesses). In the instant case, unlike the situation in *Mendoza,* the testimony of three eyewitnesses, in addition to the physical evidence, supported the state's account of the shooting, whereas the only witness to contradict the state's eyewitnesses was defendant, in his own uncorroborated and self-serving testimony. The remaining defense witnesses testified about past incidents in which Lara allegedly threatened defendant, facts that could have supported either the defense theory that Lara was the aggressor or the state's theory that defendant acted in retaliation for past events. As a whole, the facts and testimony presented in this case provided sufficient circumstantial evidence to support the jury's findings beyond a reasonable doubt that defendant brought an unlicensed gun to the bar and killed Lara with premeditation and malice aforethought.

With respect to the second issue, defendant argued on appeal that "the question of who acted aggressively in the bar was left unresolved by the credible evidence," and therefore the prosecution failed to prove beyond a reasonable doubt that defendant did not act in self-defense. We reject that proposition because the state's witnesses were unequivocal in describing defendant as the aggressor. Here, "defendant essentially argued that the trial justice should have believed his testimony rather than the testimony of the state's witnesses." *Banach,* 648 A.2d at 1368. We have consistently held, however, that "it is the task of the trial justice to determine whether the evidence presented is sufficiently credible to warrant a new trial." *Id.* (citing *Fontaine v. State,* 602 A.2d 521, 524 (R.I.1992)). As was the case in *Banach,* "defendant has failed to demonstrate that the trial justice was clearly wrong in his assessment" of the credibility of the state's witnesses. 648 A.2d at 1368. Therefore, we affirm the trial justice's denial of defendant's motion for a new trial.

## Legal Sufficiency of the Evidence

Although defendant's appeal was fashioned in terms of the denial of his motion for a new trial, his appeal rested on a claim that the evidence presented by the prosecution was legally insufficient to support a verdict of guilt beyond a reasonable doubt, a claim more appropriately raised through a motion for a judgment of acquittal. *Diaz,* 654 A.2d at 1200. This Court previously has recognized that once a trial or appellate court has determined that the evidence offered by the prosecution in a criminal case was legally insufficient to support conviction as opposed to factually insufficient, then the double jeopardy clause bars retrial of the defendant, and the appropriate remedy is acquittal rather than a new trial. *State v. Laperche,* 617

A.2d 1371, 1373 (R.I.1992) (citing *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978)).

 In reviewing a claim of legal sufficiency of the evidence in the context of a motion for a judgment of acquittal, this Court applies the same standard as that applied by the trial court, namely, "[we] must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." *State v. Snow,* 670 A.2d 239, 243 (R.I.1996). Clearly, "[t]he standard applied to a motion for judgment of acquittal requires less in the way of evidence than the standard applicable to a motion for a new trial." *State v. Salvatore,* 763 A.2d 985, 989 (R.I.2001). Having concluded that the evidence presented in this case was sufficient to withstand the more stringent review applicable to a motion for a new trial, it follows that the evidence was also sufficient to withstand a motion for a judgment of acquittal.

### Conclusion

For these reasons, we deny and dismiss the defendant's appeal, and we affirm the judgment of the Superior Court, to which we return the papers in the case.