STATE

v.

James WOODS.

No. 2005–263–C.A.

Supreme Court of Rhode Island.

Nov. 28, 2007.

Lauren S. Zurier, Esq., Providence, for Plaintiff.

Mark LaRoche, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

James Woods appeals his conviction for two counts of second-degree child molestation after two separate motions for a new trial were denied by the Superior Court. The parties appeared for oral argument on October 31, 2007, pursuant to an order of this Court ordering them to show cause why the issues raised in this appeal should not summarily be decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons below, we affirm the judgment of the Superior Court.

### Facts and Travel

James Woods lived with his niece Florence and her daughter in a single-family home in the City of Providence. Florence was a licensed foster parent who had two children in her care, siblings John and Jane,[1] also residing with the family. When Jane was nine years old, she confided in her foster sister, and later Florence, that Woods had been "messing with her." She alleged that on more than one occasion, Woods had touched her buttocks, and forced her to rub his penis over his clothing. After this disclosure by Jane, Florence held a family meeting at which Jane confronted Woods, who denied the allegations. Florence then reported the incidents to the Department of Children, Youth and Families (DCYF), which sent an investigator to the house. On January 20, 2004, after a criminal investigation by the Providence police, an arrest warrant was issued for James Woods. On February 3, 2004, Woods turned himself in to the police.

This matter eventually was tried before a jury. At trial, Jane, Florence, and Charlene, who was another niece of Woods', all testified. In an effort to attack Jane's credibility, defendant offered testimony from Florence that she was suspicious that Jane was a victim of past abuse and that she was a troubled child. Florence also testified that she had seen Jane dance in a sexual manner around a pole, that Jane had threatened suicide, and that Jane once dreamed of cutting her brother's genitals. Despite the aggressive assault on Jane's credibility, the jury apparently found the child believable and consistent, and within ninety minutes it returned a guilty verdict on both counts.

---

1. To protect the privacy of the children in this case, we have given them fictitious names.

After the jury returned the verdict, defendant moved for a new trial on the basis that no reasonable jury could find Jane to be credible. The hearing justice disagreed, however, and he denied the motion. A sentencing hearing was scheduled, but before it took place, defendant filed a second motion for a new trial, which was based on newly discovered evidence.

The hearing justice held a full evidentiary hearing on the second motion and he heard from several witnesses. After considering all the evidence, and after allowing both the prosecution and defense to argue their positions with respect to the new evidence, the hearing justice concluded that the testimony of defendant's main witness was not credible, and he denied the second motion for new trial.

## Standard of Review

■ The role of the trial justice in considering a motion for a new trial is to exercise independent judgment as the thirteenth juror. *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994) (citing *State v. Marini*, 638 A.2d 507, 515 (R.I.1994)). The justice must pass on the evidence in light of the charge to the jury, and determine his or her own opinion on that evidence. *Id.* This involves weighing the credibility of the witnesses and other material evidence, ultimately deciding whether the verdict rendered by the jury responds to the evidence presented and "whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt." *State v. Scurry*, 636 A.2d 719, 725 (R.I.1994) (citing *State v. McGranahan*, 415 A.2d 1298, 1302 (R.I.1980)).

■ If, after performing the analysis, the trial justice agrees with the verdict, then the role of the trial justice is over and the motion for a new trial is properly denied. *Marini*, 638 A.2d at 515–16. However, if the justice disagrees with the verdict, then further inquiry is necessary to determine whether the evidence is such that reasonable minds could differ as to the outcome. *Banach*, 648 A.2d at 1367 n. 1. If that is the case, the motion for a new trial still should be denied. *Id.* (citing *State v. Girouard*, 561 A.2d 882, 891 (R.I. 1989)).

■ On the other hand, when considering a motion for a new trial based on newly discovered evidence, the trial justice must undertake a different analysis. In that event there is a two-prong test. *State v. Firth*, 708 A.2d 526, 532 (R.I.1998) (citing *State v. Gomes*, 690 A.2d 310, 321 (R.I.1997)). The first prong encompasses a four-part inquiry, requiring that the evidence is "(1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, (4) of the type which would probably change the verdict at trial. * * * Once this first prong is satisfied, the second prong calls for the hearing justice to determine if the evidence presented is 'credible enough to warrant a new trial.'" *Firth*, 708 A.2d at 532 (quoting *Gomes*, 690 A.2d at 321).

■ Finally, a trial justice's determination of a motion for new trial is entitled to great weight. *State v. Dame*, 560 A.2d 330, 332–33 (R.I.1989) (citing *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989)). We will not disturb such a ruling provided the trial justice has articulated an adequate rationale for denying the motion, he or she did not overlook or misconceive material evidence, and was not otherwise clearly wrong. *State v. Bleau*, 668 A.2d 642, 646 (R.I.1995); *Banach*, 648 A.2d at 1367 (citing *State v. Robbio*, 526 A.2d 509, 513 (R.I.1987)).

## The Defendant's First Motion for New Trial

■ When he evaluated the first motion for a new trial, the hearing justice (who was also the presiding justice at trial) considered all the evidence presented and assessed whether the jury's verdict was reasonable. The defendant argued that Jane's testimony was insufficient to carry a verdict of guilty beyond a reasonable doubt. However, the justice denied defendant's motion after he found that Jane had no "axe to grind" with defendant and because he was neither the disciplinarian of the household nor a tyrant.

Thus, after acknowledging that Jane had a troubled life and "she came with some baggage to the courtroom," the hearing justice nonetheless reasoned that she had no reason to lie and make false accusations against Woods. The hearing justice found that defendant's attempt to cast doubt on Jane's credibility did not include any incident that "automatically makes her a liar or fabricator," even though her "baggage was clearly unpacked and exposed along with all of its permutations and her dreams."

We will not interfere with the hearing justice's conclusions with respect to the credibility of the complaining child-witness. We do not have the same vantage point as the presiding judge, and we are unable to assess the witness' demeanor, tone of voice, and body language. Our perspective is limited to analyzing words printed on a black and white record. *See, e.g., National Labor Relations Board v. Erie Brush and Manufacturing Corp.*, 406 F.3d 795, 802 (7th Cir.2005) ("The hearing officer was a front row observer for this testimony, giving her a far greater edge in making credibility determinations than we could ever hope to have in reviewing the black and white transcript."). Therefore, on the basis of the record before us, we do not disagree with the hearing justice's conclusion that the jury's findings were based on sufficient evidence. We hold that the Superior Court properly considered the evidence and gave it sufficient weight, and we do not disagree with the rationale of the hearing justice that "at best, [defendant] can simply argue reasonable minds could differ. Under those circumstances, motions for new trial are not granted."

## The Defendant's Second Motion for New Trial Based on Newly Discovered Evidence

■ The defendant also sought a new trial on the basis of newly discovered evidence that revolved around an alleged recantation by Jane after the trial. As noted above, the trial justice conducted an evidentiary hearing that included testimony from numerous witnesses. The defendant presented testimony from Charlene's daughter Tiffany, her friend Nelsie, Jane, Jane's brother John, and Charlene. Tiffany testified that she and Nelsie were walking home together one day in March, just after the trial. They ran into Jane and John, and the three girls began chatting while John rode his bicycle in circles around them. During this conversation, Tiffany said that Jane admitted to lying at Woods' trial about being molested.

When he considered whether defendant satisfied the two-prong test necessary to grant a new trial based on newly discovered evidence, the hearing justice did not make a specific determination with respect to the four parts of the first prong of the *Firth* test. Rather, he assumed that defendant had met that threshold burden, saying:

"I am not convinced in the first instance that the defendant crosses the threshold on the four part test, namely, that this was material information that would be of the kind that would probably change

the verdict in a new trial. But even if I were to credit you with that test, arguendo, and if I had to reach the issue of credibility—which I must do under these cases if you surmount the first part of the test, * * * [Tiffany's] testimony here was very, very difficult * * * to accept. She says early on in her testimony that when [Jane's foster sister] told her what [Jane] had told [Jane's foster sister] about [Woods] inappropriately touching her, Tiffany confronted [Jane] the next day in [Jane's foster sister's] room and, effectively, called her a liar. Tiffany called [Jane] a liar. She fenced with me a little bit as to whether she directly called her a liar to her face, but there is no question that the record will reflect that the words that she used on the stand effectively and essentially was a gauntlet thrown, accusing [Jane] of lying. And, she said that—Tiffany said or claims that [Jane] went along with that accusation; that she changed her story. * * * And Tiffany, at this point, says she told no one * * * 'Because it slipped my mind.' Later in her testimony she says she never had such a conversation with [Jane]; [Jane] never said that to her in that bedroom with [Jane's foster sister]. *So, she's all over the place on this one.* There's no issue that she certainly has some predilection to assist [Woods]. She acknowledges on the stand that she didn't want the defendant to get in trouble 'because of a little, lying girl.' * * * *She's back and forth like a pendulum on this.*" (Emphases added.)

Although Tiffany's friend Nelsie repeated the same general story as Tiffany, there were some serious inconsistencies between the two that were noted by the hearing justice. The hearing justice also observed that Nelsie did not remember the conversation until Tiffany telephoned her, just prior to the hearing on the motion for a new trial, to remind her of it. When Nelsie testified about her independent memory of meeting John and Jane, she recalled being told by Jane that Woods molested her and that she warned Jane to be careful, and not to let people touch her like that. In our opinion, the justice did not err when he reasoned that such a warning did not undermine Jane, but instead "solidifies, confirms and corroborates" her trial testimony.

The defendant relies upon *State v. Messa*, 593 A.2d 957 (R.I.1991), to argue that a new trial should have been granted. In *Messa*, the defendant was convicted of five counts of second-degree child molestation sexual assault, and one count of second-degree sexual assault. *Id.* at 958. The defendant was employed as a public school teacher in Providence when the allegations were made. *Id.* The six complainants, all boys under thirteen years old, were students in the defendant's fifth-grade class. *Id.* After the Superior Court denied the defendant's motion for a new trial based on newly discovered evidence, the defendant appealed to this Court. On appeal, this Court reversed the lower court's ruling that the first prong to the test for newly discovered evidence had not been satisfied. *Id.* at 959–60. But here, unlike in *Messa*, the trial justice assumed, without deciding, that defendant would be able to satisfy the four parts of the first prong in the *Firth* test. The hearing justice then denied defendant's motion because he was unable to satisfy the second prong, which requires the Court to exercise its own independent judgment on the sufficiency and credibility of the evidence. *See, e.g., State v. Hornoff*, 760 A.2d 927, 934–35 (R.I.2000) (upholding hearing justice's finding that the defendant did not meet his burden for a new trial based upon newly discovered evidence because the evidence

was not sufficiently credible to satisfy the second prong of the *Firth* test).

In a well-reasoned consideration of the defendant's motion, the hearing justice found that the testimony of the defendant's main witness, Tiffany, was "very, very difficult" to accept. He noted several inconsistencies in her testimony, and he questioned her motives for coming forward so late in the day, especially because her mother was the defendant's niece and the only defense witness in the first trial. He also found that the other witnesses offered testimony that was consistent with Jane's version of events. The hearing justice properly considered each of the defendant's witnesses and their testimony, and he concluded that the "new evidence" was insufficient to go before another jury. We hold that the hearing justice was not clearly wrong and did not misconceive the evidence when he said that "[t]he bottom line is that [the witness] is unworthy of belief from my point of view as a front row observer."

## Conclusion

We affirm the judgment of the Superior Court and return the papers of this case thereto.