February 2, 2022

**Supreme Court**

No. 2020-89-C.A.
(P2/16-1651A)

| | |
|---|---|
| State | : |
| v. | : |
| Erik Valdez. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|          |     |
|----------|-----|
| State    | :   |
| v.       | :   |
| Erik Valdez. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  The defendant, Erik Valdez (defendant or Mr. Valdez), appeals from a Superior Court judgment of conviction following a jury trial at which he was found guilty of second-degree sexual assault, breaking and entering, and disorderly conduct. The defendant alleges before this Court that the trial justice erred in denying his motion for judgment of acquittal on the count alleging disorderly conduct and in denying his motion for new trial on all convicted counts.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and this case may

- 1 -

be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

On June 8, 2016, the state filed a four-count criminal information in Providence County Superior Court charging Mr. Valdez with second-degree sexual assault, breaking and entering, simple assault, and disorderly conduct. Trial on the charges commenced on June 4, 2019, beginning with the testimony of Aleksandra Osipova and Lacey Figueroa. The testimony of the two women reveals the following. Ms. Osipova and Ms. Figueroa met through work in 2014 and became good friends. Throughout the summer of 2015, they spent most weekends together, either with their children or, when their children were with their fathers, drinking and going to clubs. At that time, Ms. Figueroa was dating Mr. Valdez; she occasionally invited him to events that Ms. Osipova also attended, including a summer barbecue and a night at a club. Ms. Osipova had met Mr. Valdez but, due to a language barrier, the two did not talk often; Mr. Valdez did not speak English, and Ms. Osipova did not speak Spanish. During those brief encounters, Ms. Figueroa would translate between English and Spanish to facilitate conversation between Ms. Osipova and Mr. Valdez.

On August 1, 2015, Ms. Osipova and Ms. Figueroa made their customary plans to drink and go to Club Ultra in Providence. Ms. Figueroa arranged for Mr.

Valdez and his friend, Oliver Palmer, to drive Ms. Osipova and her so that Ms. Osipova, who typically drove, could relax and drink. Ms. Figueroa arrived at Ms. Osipova's apartment at approximately 9 p.m., followed a little later by Mr. Valdez and Mr. Palmer. The two women "pregamed" by drinking three or four mixed drinks as they danced and listened to music, got dressed, and did their hair and makeup before going out. The two men sat at the kitchen table while the women got ready in the bedroom, but occasionally the women would go into the kitchen to take shots of vodka with the men.

Mr. Palmer drove the group to the club, arriving around 11 p.m. Mr. Valdez and Mr. Palmer headed to the bar while Ms. Osipova and Ms. Figueroa danced and drank more mixed alcoholic beverages. The group left when the club closed in the early morning hours of August 2, 2015. They first went to Mr. Valdez's apartment to drink alcohol and chat some more; then, according to her trial testimony, Ms. Osipova asked to go home because she was tired. However, Ms. Figueroa testified that Ms. Osipova wanted to go home because she was sick. Mr. Palmer drove the group to Ms. Osipova's apartment as the sun was rising.

Upon arrival at Ms. Osipova's apartment, the women bade their goodbyes to the two men and walked into the building. Ms. Osipova opened the back door to her building, which had no lock. She walked up a short flight of stairs to her apartment,

- 3 -

unlocked the door, and let Ms. Figueroa and herself in.  Ms. Figueroa closed the door behind them, but she did not lock it.

Ms. Osipova recalled at trial that, after she entered her apartment, she walked into her bedroom, where she lay on her stomach, pulled up her dress slightly to be more comfortable, and immediately fell asleep. Ms. Figueroa went to use the bathroom off the kitchen. Ms. Osipova's next memory was being awakened by Mr. Valdez standing over her, touching her buttocks through her underwear, and moving his hand toward her vagina. Ms. Osipova jumped up and began forcing Mr. Valdez out of her bedroom. She was cursing at him and yelling, "Get out[!]" while pushing him out of the bedroom. As Ms. Osipova pushed him, Mr. Valdez resisted her efforts and grabbed her upper arm, bruising it.

From the bathroom, Ms. Figueroa heard Ms. Osipova screaming and yelling, "Get out[!]" and quickly went to see what was happening. Ms. Figueroa instantly knew something was wrong when she saw Ms. Osipova outside of her bedroom door, pushing Mr. Valdez out. Ms. Osipova then yelled to Ms. Figueroa: "This mother f'er just touched me[.]" Ms. Figueroa immediately joined Ms. Osipova in pushing Mr. Valdez out of the apartment. Mr. Valdez stood in the apartment, blocking the women's attempts to forcibly eject him from the apartment; he did not leave. For approximately five minutes, Ms. Osipova repeatedly screamed at Mr. Valdez to "Get out[!]" and struggled with him until she and Ms. Figueroa

- 4 -

successfully drove him out of the apartment. At that point, Ms. Figueroa grabbed an empty beer bottle from the kitchen table, swung it at Mr. Valdez, and continued to chase Mr. Valdez out of the building with the bottle before throwing it at him outside, missing him. Ms. Figueroa then reentered the apartment to check on Ms. Osipova. Ms. Osipova was shaken and told Ms. Figueroa that Mr. Valdez had touched "her privates." Neither woman called the police at that time; Ms. Figueroa went home, and Ms. Osipova went to bed to sleep before she had to go to work.

During her workday, Ms. Osipova kept thinking about her encounter with defendant. She called Ms. Figueroa on her lunch break to discuss what happened. Ms. Figueroa told Ms. Osipova that she was worried about being charged with assault for wielding the beer bottle against Mr. Valdez. After mulling over the events, when Ms. Osipova arrived home, she called the Pawtucket Police Department, which dispatched an officer to her home to take her statement.

Both Ms. Osipova and Ms. Figueroa were cross-examined at trial about photographs taken with Ms. Figueroa's cell phone. Ms. Osipova and Ms. Figueroa maintained that the photographs were taken at the club on August 1 or 2, 2015, because they recognized themselves, Mr. Valdez, and Mr. Palmer in one of the images. Ms. Osipova also recognized the black dress she wore, a dress she often wore to the club.

After the state rested its case, defendant moved for judgment of acquittal on all counts pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. The trial justice denied defendant's motion, determining that there was sufficient evidence for each count.

The defendant then testified to the events of August 1 and 2, 2015, as he remembered them. Mr. Valdez testified that, after the group left the club, Mr. Palmer immediately drove the women back to Ms. Osipova's apartment because the women were drunk. Mr. Valdez watched the women help each other enter the apartment building before he spotted a pair of high-heeled shoes in the backseat of the car. Thinking that the shoes belonged to one of the women, Mr. Valdez grabbed them and decided to go up to Ms. Osipova's apartment to return them. He walked into the apartment alone through the unlocked door, placed the shoes between the kitchen and the hallway, and surprised Ms. Osipova and Ms. Figueroa with his entrance. The women, belligerent and drunk, immediately began yelling and hitting Mr. Valdez, ignoring his attempts to explain himself. Mr. Valdez testified that he stood there for a few minutes, defending himself from the women's blows, before he turned and left the apartment.

The defendant next called Estuardo Hernandez to testify. Mr. Hernandez testified that he was the second man in the photographs introduced into evidence,

and that the photographs were taken at the beginning of June 2015 when they were at Club Ultra celebrating his birthday, not at the beginning of August.

The defendant also called the police officer who responded to Ms. Osipova's call on the night of August 2, 2015, as a witness at trial. The officer testified that Ms. Osipova stated that, prior to returning to her apartment that morning, she had been at a friend's house in Central Falls but left because she became ill.

Lastly, Mr. Valdez called Richard Suls, an expert in digital file forensics, to give his expert opinion on when the photographs were taken. Mr. Suls testified that the metadata of the photographs was consistent with the images being captured on June 6, 2015.

After defendant rested his case, he pressed a renewed motion for judgment of acquittal, which was again denied by the trial justice.

During closing arguments, defense counsel implored the jury to discredit the testimony by Ms. Osipova and Ms. Figueroa in favor of defendant's testimony. Defense counsel underscored their inconsistent testimony and lapses in memory due to their inebriation on the night of the alleged incident; Ms. Figueroa's motive to contrive her story given her fear of being charged with assault; and the women's repeated insistence that the photographs were taken on August 1 or 2, 2015, rather than in June of that year.

The jury found defendant not guilty of simple assault but found him guilty on three counts: count one, second-degree sexual assault; count two, breaking and entering; and count four, disorderly conduct.

The defendant moved for a new trial on all convicted counts pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. The trial justice denied defendant's motion. He sentenced Mr. Valdez to seven years' incarceration, five years of which were suspended, with probation, on count one; a term of seven years, five years of which were suspended, with probation, on count two, to run concurrently with the sentence for count one; and a term of six months suspended, with probation, on count four, to run concurrently with the sentence for count two.

The defendant filed a notice of appeal on September 10, 2019, before the judgment of conviction was entered on October 11, 2019.[1]

Mr. Valdez specifies two errors on appeal. First, he contends that the trial justice erred in denying his motion for a judgment of acquittal on the charge of disorderly conduct because, he argues, the evidence was not sufficient to establish that he engaged in tumultuous behavior. Second, Mr. Valdez asserts that the trial justice erred in denying his motion for new trial on the charges of second-degree

---

[1] The defendant's notice of appeal is timely because, pursuant to Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure, it is treated as if it were filed after the judgment of conviction was entered. Also, the final judgment encompasses all prior interlocutory orders that merge into the judgment. *Greensleeves v. Smiley*, 942 A.2d 284, 290 (R.I. 2007).

sexual assault, breaking and entering, and disorderly conduct. He argues that the trial justice overlooked and misconceived material evidence, did not independently assess the credibility of the witnesses and the weight of the evidence, and failed to explain his decision with respect to the charge of disorderly conduct.

## Motion for Judgment of Acquittal

When this Court reviews a challenge to the legal sufficiency of the evidence in the context of a motion for judgment of acquittal pursuant to Rule 29, we "appl[y] the same standard as that applied by the trial court, namely, 'we must view the evidence in the light most favorable to the state, giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Otero*, 788 A.2d 469, 475 (R.I. 2002) (brackets and deletion omitted) (quoting *State v. Snow*, 670 A.2d 239, 243 (R.I. 1996)). "If the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt, the motion for judgment of acquittal must be denied." *Snow*, 670 A.2d at 243; *see State v. Grundy*, 582 A.2d 1166, 1170 (R.I. 1990); *State v. Caruolo*, 524 A.2d 575, 581-82 (R.I. 1987).

To prove the charge of disorderly conduct, G.L. 1956 § 11-45-1(a) requires the state to show that a defendant "intentionally, knowingly, or recklessly" engaged "in fighting or threatening, or in violent or tumultuous behavior[.]" Mr. Valdez argues that the motion for judgment of acquittal on the charge of disorderly conduct

- 9 -

was appropriate because the state failed to meet its burden under § 11-45-1(a). He contends that the evidence demonstrated only that he stood in the hallway of Ms. Osipova's apartment, seemingly dazed, while Ms. Osipova and Ms. Figueroa attacked him. Moreover, he argues that the evidence shows that, although he protected himself and covered his face during the attack, he remained in the apartment no more than five minutes before leaving.

In denying the motion for judgment of acquittal, the trial justice found sufficient evidence of tumultuous behavior by defendant, which the trial justice defined as "a person acting in such a manner as to cause a commotion, disturbance, or agitation of a multitude, in essence to create an uproar." The trial justice noted that Mr. Valdez entered Ms. Osipova's apartment, where he was not welcome, and fought back when Ms. Osipova and Ms. Figueroa tried to push him out of the apartment.

After reviewing the evidence presented at trial and applying the same standard as the trial justice, we are satisfied that the trial justice correctly denied the motion for judgment of acquittal on the charge of disorderly conduct. Ms. Osipova testified that she woke up in the early-morning hours to find Mr. Valdez in her bedroom, standing over her. She further testified that she jumped up and screamed at defendant to "Get out[!]"; she began pushing him out of her apartment, but Mr. Valdez actively resisted her efforts. Ms. Figueroa testified that she was in the bathroom when she

- 10 -

heard her friend scream and that, when she went into the hallway, she saw Ms. Osipova pushing Mr. Valdez out of the apartment. Ms. Figueroa explained that she joined Ms. Osipova in pushing defendant out of the apartment and that there was a lot of yelling and commotion throughout the incident.

Viewing the testimony of Ms. Osipova and Ms. Figueroa in the light most favorable to the state, giving those witnesses full credibility and drawing all reasonable inferences from their testimony consistent with guilt, that testimony was sufficient to establish that Mr. Valdez acted in a manner to cause a commotion and a disturbance when the women tried to force him out of the apartment, and thus that he engaged in tumultuous behavior. We therefore conclude that the trial justice did not err in denying defendant's motion for judgment of acquittal on the count alleging disorderly conduct.

## Motion for New Trial

In challenging the trial justice's decision to deny his motion for new trial, Mr. Valdez argues not that the evidence was legally insufficient to convict him of the charges, but that the weight of the evidence did not support the conviction.[2]

---

[2] The state notes that, "[w]hen faced with a defendant's challenge to the rulings on both [a motion for judgment of acquittal and a motion for new trial based on the sufficiency of the evidence], * * * this Court first conducts a review of the new-trial motion." (Quoting *State v. Richardson*, 47 A.3d 305, 317 (R.I. 2012)). However, as counsel for Mr. Valdez correctly points out, where the new-trial motion challenges the weight of the evidence rather than the legal sufficiency, the analyses differ. *See State v. Clark*, 974 A.2d 558, 569 (R.I. 2009) ("[W]e note the distinction between a

When analyzing the evidence in the context of a motion for a new trial, a trial justice must evaluate the evidence with reference to the jury instructions; independently assess both witness credibility and the weight of the evidence; and resolve whether she or he would have come to the same conclusion as the jury. *See State v. Johnson*, 251 A.3d 872, 886 (R.I. 2021). After conducting this independent analysis, the trial justice should deny the motion for a new trial if she or he "agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome[.]" *Otero*, 788 A.2d at 472. However, where the trial justice disagrees with the jury's verdict, she or he must conduct further analysis "to determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." *State v. Tabora*, 198 A.3d 516, 519 (R.I. 2019) (quoting *State v. Baptista*, 79 A.3d 24, 29 (R.I. 2013)). The trial justice may grant the motion for a new trial in cases where she or he determines that the verdict meets this standard. *Id.*

We review the denial of a motion for new trial with "great deference because a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *State v.*

criminal defendant's motion for a new trial that attacks the sufficiency of the evidence supporting the guilty verdict and a new-trial motion that contends that the verdict is against the weight of the evidence."); *see also State v. Hallenbeck*, 878 A.2d 992, 1008-12 (R.I. 2005) (reviewing a motion for new trial based on the weight of the evidence subsequent to analyzing a motion for judgment of acquittal).

*Acosta*, 247 A.3d 489, 494 (R.I. 2021) (deletion omitted) (quoting *State v. Alexis*, 185 A.3d 526, 537 (R.I. 2018)). We consider whether the trial justice, acting as the thirteenth juror, exercised independent judgment in analyzing the evidence presented. *See, e.g.*, *State v. Fleck*, 81 A.3d 1129, 1133 (R.I. 2014). If our review reveals that "the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, [the] decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *State v. Gomez*, 848 A.2d 221, 234 (R.I. 2004).

We do not require the trial justice to refer to all of the evidence that supports the decision; rather, the trial justice "need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied the appropriate standards." *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994). Moreover, it is the movant's burden to "convinc[e] this [C]ourt that the trial justice did not conscientiously apply these standards." *Id.*

Our review of the record in this case reveals that the trial justice performed the proper analysis as the thirteenth juror and explained his independent judgment as to the credibility of the witnesses, the weight of their testimony, and the weight of the evidence. The trial justice agreed with the jury's verdict, stating, "[T]here is

nothing exceptional about this case that would cause the [c]ourt to revisit and undermine the verdict of the jury."

In particular, when analyzing the evidence presented, the trial justice considered the evidence in the light of his charge to the jury and provided his opinion of the testimony of the three individuals present in Ms. Osipova's apartment in the early-morning hours after the women were dropped off. He noted that Ms. Osipova was surprised at defendant's presence in the apartment and determined that the intense reactions of Ms. Osipova and Ms. Figueroa to defendant's presence "attest to something grander than somebody dropping off shoes. * * * It's a reaction to the act that he was convicted of." The trial justice also found that defendant's testimony that Ms. Osipova and Ms. Figueroa reacted in surprise and took offense to his presence in the apartment corroborated the fact that Ms. Osipova was shocked at finding him in her apartment, as well as that she and Ms. Figueroa attempted to push him out of the apartment.

Nevertheless, Mr. Valdez asks this Court to reverse the trial justice's denial of his motion for a new trial on the three convicted counts because, he asserts, the trial justice overlooked and misconceived material evidence vis-à-vis the charges of second-degree sexual assault, breaking and entering, and disorderly conduct. Mr. Valdez argues that the trial justice failed to consider the implausible, unreliable, and conflicting nature of the testimony provided by Ms. Osipova and Ms. Figueroa. Mr.

Valdez repeats assertions made both in closing arguments to the jury and in pressing the motion for a new trial before the trial justice: He highlights Ms. Osipova's and Ms. Figueroa's inconsistent statements, their lapses in memory due to inebriation, their motive to contrive their stories, and their insistence that a photograph entered into evidence was taken on August 1 or 2, 2015, despite expert testimony to the contrary.

The defendant's contentions are without merit. The trial justice did not overlook or misconceive testimony provided by Ms. Osipova and Ms. Figueroa. He independently assessed Ms. Osipova's and Ms. Figueroa's credibility and acknowledged that, while the two women made some inconsistent statements due to their inebriation on the night of the alleged incident, overall their testimony and defendant's testimony corroborated the charges for which defendant was convicted. *See State v. Jensen*, 40 A.3d 771, 781 (R.I. 2012) (acknowledging that "the presence of some inconsistencies between or among utterances of a witness or witnesses at different points in time does not [by itself] render the testimony unworthy of belief"); *Fleck*, 81 A.3d at 1135 (affirming the trial justice's findings that the complaining witness was credible and that other evidence corroborated the witness's testimony, despite her cognitive deficiency). The trial justice disagreed with defendant's contention that the testimony by Ms. Osipova and Ms. Figueroa was so unreliable that the evidence failed to sustain the state's burden of proof.

The trial justice also remarked that he did not find the photograph compelling evidence; he noted, "Frankly, the [c]ourt was not exceptionally impressed by that. They went out a number of times. * * * [S]he wore a black dress frequently. She got the picture wrong." The trial justice further noted that "the individual that testified as to that picture, * * * didn't look like the individual in the picture." The trial justice did not overlook or misconceive these aspects of the evidence at trial, but rather found that testimony provided by Ms. Osipova and Ms. Figueroa was more compelling than the testimony and evidence presented by defendant. *See State v. Mattatall*, 603 A.2d 1098, 1109 (R.I. 1992) ("[W]hen a defendant elects to testify, he runs the very real risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth. * * * As long as there exists some other evidence of the defendant's guilt, disbelief of a defendant's sworn testimony is sufficient to sustain a finding of guilt.").

Moreover, we are unpersuaded by defendant's assertion that the trial justice failed to explain his decision, particularly as it relates to the charge of disorderly conduct. As discussed previously, the thrust of defendant's argument in support for his motion for new trial was that Ms. Osipova and Ms. Figueroa were not credible witnesses compared with defendant, and, thus, the weight of the evidence did not support conviction. However, the trial justice directly addressed the issues of credibility when he determined that he agreed with the jury verdict, finding Ms.

- 16 -

Osipova and Ms. Figueroa more credible than defendant. *See Mattatall*, 603 A.2d at 1109. The trial justice also relied on evidence supporting the conviction: defendant's testimony that Ms. Osipova and Ms. Figueroa "took offense to his presence" and "tried to push him out[.]" Our review of the record reveals that additional evidence supports the verdict, including the testimony of Mr. Valdez acknowledging that chaos ensued when he did not immediately leave Ms. Osipova's apartment, as well as the evidence of bruising to Ms. Osipova's upper arm resulting from his resistance to her efforts to eject him from the apartment. *See State v. Pineda*, 13 A.3d 623, 642 (R.I. 2011) (examining the record for additional evidence in support of the conviction in dealing with a motion for new trial); *State v. Barnes*, 122 R.I. 451, 459, 409 A.2d 988, 992 (1979) (explaining that, in the context of a motion for new trial, this Court may independently examine the record if it is unclear whether the trial justice evaluated the evidence). We conclude that the trial justice's references to the evidence and testimony throughout his decision on the motion for a new trial are sufficient to enable this Court to conclude that he applied the appropriate standards and properly evaluated the evidence. *See Pineda*, 13 A.3d at 642; *Banach*, 648 A.2d at 1367.

We are satisfied from our review of the record that the trial justice exercised independent judgment, properly analyzed the evidence presented, did not overlook or misconceive testimony provided by Ms. Osipova and Ms. Figueroa, and

articulated adequate reasons for denying the motion for a new trial based on the weight of the evidence. We therefore conclude that the trial justice did not err in denying the motion for a new trial.

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction of the Superior Court and remand the record in this case.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Erik Valdez. |
| **Case Number** | No. 2020-89-C.A.<br>(P2/16-1651A) |
| **Date Opinion Filed** | February 2, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State:<br><br>Brianne M. Chevalier<br>Department of Attorney General<br>For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |

SU-CMS-02A (revised June 2020)