STATE

v.

John DAVIS.

No. 2003–622–C.A.

Supreme Court of Rhode Island.

July 8, 2005.

Lauren Sandler Zurier, Esq., Providence, for Plaintiff.

Janice M. Weisfeld, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

In this appeal, the defendant, John Davis (defendant or Davis), asks this Court to set aside his judgments of conviction for assault with a dangerous weapon with intent to rob and for breaking .and entering and to remand this case for a new trial. The defendant alleges that the trial justice erroneously denied his motion for a new trial. For the following reasons, we affirm the judgments.

### Facts and Travel

This crime was à brutal home invasion spanning two apartments in a multifamily dwelling in Providence. The events leading up to this crime began one Friday night in late September 1999, when Michael P. Lizotte (Lizotte) met defendant at a bar. Over the next two weekends, they spent time together at Lizotte's apartment. Lizotte told defendant that he would return from work at 8 p.m. on ·October 4, 1999, and they made arrangements to meet that evening at Lizotte's apartment.

At around 6:30 p.m., Lizotte's upstairs neighbor, Carlo Catucci (Catucci), answered a knock at his door, and a masked man, later· identified as defendant, pushed his way into the apartment and thrust a knife to Catucci's throat. According to Catucci, the man wore a "white tee shirt with a black design of black concentric circles on the front." The assailant forced Catucci to the floor, facedown, tied his hands together, and placed a plastic bag over his face. Catucci then heard two sets of footsteps, signaling the arrival of a second intruder, and both assailants began kicking him. They removed the plastic bag but placed a cloth bag over Catucci's head and gagged his mouth. The intruders proceeded to ransack his apartment, knocking some of Catucci's computer equipment to the floor; this caused Lizotte, who had arrived home early, to shout to Catucci about the noise. Realizing that Lizotte had arrived, the intruders went downstairs to victimize him, affording Catucci an opportunity to free his hands and uncover his. head.

When the original intruder returned to his apartment, Catucci was on his knees with his hands free. His attacker was now unmasked, affording Catucci an opportunity to see the man's face. Catucci was stabbed with a knife that was smaller than the first knife; the assailant pinned Catuc-

ci against the wall and repeatedly asked him: "Are you friends with your downstairs neighbor?" When Catucci answered "yes," the man led Catucci down the hallway and pushed him down the stairs. Catucci landed at the bottom of the first set of stairs, and he was kicked and punched repeatedly while tumbling down a second set of stairs. At this point the second intruder came from the basement, and he kicked and stepped on Catucci as he walked out the door. Catucci testified that the wounds he suffered in this attack required surgery and a six-day hospital stay.

When the police presented Catucci with a photo array at the hospital, he identified defendant's photograph as his attacker and informed the officers that he was "one hundred percent" sure of his identification.

Lizotte testified that he arrived home earlier than he expected, and when he heard noise from the upstairs apartment, he jokingly yelled to Catucci to "stop making a racket up there." Lizotte testified that he found it unusual that Catucci did not respond. After Lizotte had been in his apartment for a few moments, he answered a knock at his door and was confronted by a masked man dressed in a green army jacket and dark pants. The intruder was armed with a large knife. He wrestled Lizotte to the floor and pressed the knife against his throat. The man stabbed him and tried to strangle him. After a blanket was thrown over Lizotte's body, a second person unsuccessfully attempted to tie his feet. Lizotte testified that he heard a series of whistles from upstairs, followed by Catucci screaming that he had been stabbed. At this point, Lizotte, who was left alone, managed to escape to a neighbor's home.

A grand jury issued a four-count indictment against defendant: count 1, assault with a dangerous weapon of Catucci, in a dwelling, with intent to murder, in violation of G.L.1956 § 11–5–4; count 2, assault with a dangerous weapon of Catucci, in a dwelling, with intent to rob, in violation of § 11–5–4; count 3, assault with a dangerous weapon of Lizotte, in a dwelling, with intent to murder, in violation of § 11–5–4; and count 4, breaking and entering Catucci's apartment, in violation of G.L.1956 § 11–8–2.

At trial, Catucci testified that he was able to see his attacker's face during the struggle and identified defendant as the man wearing the white tee shirt who had assaulted and stabbed him. Catucci identified the knife that defendant used when he first entered his apartment, and that knife was marked exhibit No. 8. Catucci admitted that he did not observe a scar on his attacker, although there was a visible scar on defendant's face.

At trial, Lizotte identified the knife marked exhibit No. 8 as the knife wielded by his attacker. Lizotte testified to the injuries he suffered, including stab wounds and bruises, and explained that the capillaries in his eyes burst when he was choked, causing his eyes to fill with blood. Lizotte testified that, based upon the attacker's physical characteristics, defendant could have been the masked man who initially attacked him, but he did not make a positive identification.

Detective Robert Badessa of the Providence Police Department testified that the knife, marked exhibit No. 8, was found in a blue gym bag at the crime scene, and an examination revealed defendant's fingerprints on the knife.

The jury found defendant guilty of count 2—assaulting Catucci with a dangerous weapon, in a dwelling, with intent to rob—and count 4—breaking and entering Catucci's apartment—and returned verdicts of not guilty on counts 1 and 3—assaulting Catucci and Lizotte with intent to murder.

After the jury returned its verdict, defendant moved to dismiss, for an arrest of judgment, and for a new trial. The trial justice heard and denied defendant's motions. On count 2, defendant was sentenced to a term of forty years, twenty-five years to serve, and the balance suspended with probation, and a consecutive ten-year sentence as a habitual offender; and on count 4, defendant was sentenced to an additional consecutive ten-year suspended sentence, with probation. This appeal ensued.

## Issues Presented

The defendant assigns two grounds of error to the trial justice's denial of his motion for a new trial. Davis argues that by not discussing the conflicting testimony surrounding the identification of the person who entered Catucci's apartment and stabbed him, the trial justice failed to consider all the material evidence. Also, defendant contends that a new trial was warranted because the jury verdict did not disclose whether the jury unanimously convicted defendant of the offenses charged as a principal or as an aider and abettor. We affirm the judgment.

## Standard of Review

■ "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Salvatore,* 763 A.2d 985, 990–91 (R.I.2001) (quoting *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994)). When ruling on a motion for a new trial, the trial justice must perform three analyses:

"First, 'the trial justice must consider the evidence in light of the charge to the jury, a charge that is presumably correct and fair to the defendant.' * * * Next, the trial justice should form his or her own opinion of the evidence. * * *

In doing so, '[t]he trial justice must .* * * weigh the credibility of the witnesses and [the] other evidence and choose which conflicting testimony and evidence to accept and which to reject.' * * * Finally, 'the trial justice must determine by an individual assessment of the evidence and in light of the charge to the jury, whether the justice would have reached a different result from that of the jury.' " *Id.* at 991 (quoting *Banach,* 648 A.2d at 1367).

We will disturb the trial justice's judgment only "if the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong." *Id.* (quoting *Banach,* 648 A.2d at 1367). "In cases in which the trial justice has articulated a sufficient rationale for denying a motion for a new trial, the decision will be given great weight." *Id.* (quoting *Banach,* 648 A.2d at 1367). The record, therefore, should disclose "a few sentences of the [trial] justice's reasoning on each point" and that the trial justice "cite[d] evidence sufficient to allow this [C]ourt" to determine whether the appropriate standards were applied. *Id.* (quoting *Banach,* 648 A.2d at 1367).

## Discussion

■ In denying defendant's motion for a new trial, the trial justice referred to evidence presented by the state that supported the jury's verdict. The trial justice recounted Catucci's testimony that he had an opportunity to view his assailant's face and "distinctive looking tee shirt." He also noted that Catucci identified Davis's photograph from a photo array and told a police detective that he was "one hundred percent" confident of his identification. The trial justice discussed the fact that Davis's fingerprints were discovered on the bigger knife and that Catucci identified that knife as the weapon his assailant used

when he first entered the apartment. Also, the trial justice declared that he had "no doubt that [Catucci's] testimony was credible and that his identification was well-founded." The trial justice agreed with the jury's verdict and denied defendant's motion for a new trial.

We are satisfied that the trial justice performed a proper analysis of the evidence he found reliable and was not required to "acknowledge" evidence that purportedly established that Davis was not the person who entered Catucci's apartment and stabbed him. When a trial justice expressly relies upon the testimony of certain witnesses in explaining his or her rationale for denying a motion for a new trial, the trial justice implicitly has communicated that he or she "accepted their testimony as the most credible among those witnesses who testified at the trial." *State v. Medina*, 747 A.2d 448, 449 (R.I.2000). In so doing, the trial justice also implicitly has rejected contrary proof. *Id.*

In the case before us, the trial justice sufficiently set forth his rationale for denying defendant's motion for a new trial, and in performing that analysis, he applied the appropriate standards. Consequently, we accord his decision great weight. We are of the opinion that there was overwhelming evidence before the trial justice supporting the guilty verdicts and the trial justice's decision denying the motion for a new trial. We reject defendant's argument that the trial justice overlooked or misconceived material evidence relating to the identity of Catucci's assailant or was otherwise clearly wrong.

In his charge to the jury, the trial justice instructed the jury that,

"[t]he [s]tate may prove its case against * * * defendant, John Davis, first by showing that he was principal by proving beyond a reasonable doubt that * * * defendant, Davis, personally committed the offenses charged; or, the [s]tate may prove that he was an aider and abettor by proving beyond a reasonable doubt that * * * defendant, Davis, aided and abetted, or assisted another person in carrying out the offenses."

We recognize that the jury verdict did not disclose, nor was the jury required to determine, whether defendant was a principal or an aider or abettor.[1] However, defendant did not properly preserve this issue for appellate review. Nor did defendant, before trial, seek to clarify the charges against him by requesting a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure.[2] Although the trial justice presented the parties with the proposed jury instructions in advance of his charge to the jury, defendant did not object to any portion of the instructions. It was only when arguing his motion for a new trial,[3] after the jury returned the guilty verdicts, that

---

1. On appeal, defendant does not argue that he was convicted of being both a principal and an aider or abettor of the same crime. *Contra State v. Harnois*, 853 A.2d 1249, 1253 (R.I. 2004).

2. A bill of particulars serves to inform a criminal defendant "of the evidentiary details establishing the facts of the offense when such facts have not been included in the indictment or information," *State v. LaChapelle*, 638 A.2d 525, 527 (R.I.1994), and "to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial." *State v. Brown*, 626 A.2d 228, 231 (R.I. 1993) (quoting *State v. Collins*, 543 A.2d 641, 654 (R.I.1988)). The bill of particulars restricts the proof to the allegations set forth in the bill. *Brown*, 626 A.2d at 231.

3. After the jury delivered its verdict, defendant moved to dismiss and for an arrest of the judgment. The defendant does not appeal the denial of these motions.

defendant first posed any objection to the jury instructions and the verdict form.

■ Rule 30 of the Superior Court Rules of Criminal Procedure provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." The failure to contemporaneously object to the trial justice's instructions results in a waiver of any claim of error on appeal, unless, in the rare instance, "the alleged error rises to substantial constitutional dimensions." *Jefferson v. State,* 472 A.2d 1200, 1203–04 (R.I.1984). We do not identify a constitutional component to defendant's allegations of error concerning the jury instructions.

■ Although this issue was not properly preserved for appellate review, it also is without merit. The state bears the burden of proving "every element necessary to constitute the crime charged beyond a reasonable doubt." *State v. Hazard,* 745 A.2d 748, 751 (R.I.2000). "A jury instruction relieving the state of this burden violates a defendant's due process rights." *Id.* In the case on appeal, G.L. 1956 § 11–1–3 provides that a person who aids or abets "another to commit any crime or offense, shall be proceeded against as principal * * * and upon conviction shall suffer the like punishment as the principal offender is subject to by this title." The law is well settled "that one who aids and abets in the commission of the crime and is also present at the scene may be charged and convicted as a principal." *State v. McMaugh,* 512 A.2d 824, 831 (R.I.1986). General Laws 1956 § 11–1–3 eliminates the legal distinction between the commission of a crime as a principal and aiding and abetting another in the commission of a crime, and for this reason, defendant's manner of participation, whether as a principal or an aider or abettor, is not an element of the crime.

Because defendant's manner of participation is not an element of the crimes charged in the indictment, the state need not persuade a unanimous jury beyond a reasonable doubt that defendant was a principal or an aider or abettor. We agree with the state that, "as long as a jury, having been properly instructed about the alternative theories of participation, is unanimously convinced beyond a reasonable doubt that * * * defendant has participated in the crime as either an aider/abettor or as a direct principal, the jury is not required *also* unanimously to determine the *manner* of defendant's participation."

The defendant argues that the holdings in *State v. Saluter,* 715 A.2d 1250 (R.I. 1998), and *State v. Prefontaine,* 667 A.2d 531 (R.I.1995), require that the jury verdict reveal a unanimous finding that defendant acted as the principal or as an aider or abettor. We disagree.

In *Saluter,* this Court vacated seven counts of a judgment of conviction, concluding that those counts of the *indictment* suffered from duplicity because separate incidents of sexual assault were alleged in one count of the indictment.[4] *Saluter,* 715 A.2d at 1253–55. In *Prefontaine,* this Court granted a new trial when it was "clear that neither the jury nor the judge knew precisely what offenses the defendant was found guilty of committing." *Prefontaine,* 667 A.2d at 532. The defendant's reliance upon *Saluter* and *Prefontaine* is misplaced; in

---

4. In *State v. Saluter,* 715 A.2d 1250, 1254–55 (R.I.1998), the bill of particulars repeatedly described multiple offenses within a single count of the indictment.

this case, the jury unanimously found the defendant guilty of two of the crimes charged, each of which constituted one offense charged in separate counts of the indictment. We note the jury acquitted the defendant of the remaining two counts, and there is no suggestion of duplicity or confusion in the result in this case.

## Conclusion

For the foregoing reasons, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.