**Supreme Court**

No. 2011-154-C.A.
(W2/10-103A)

State                    :

v.                      :

Julie Long.             :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                               :

v.                                  :

Julie Long.                         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on January 23, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The defendant, Julie Long, appeals from a judgment of conviction after a jury verdict finding her guilty of manufacturing or cultivating marijuana in violation of G.L. 1956 § 21-28-4.01(a)(1), (4)(i).  After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time.  We affirm the judgment of conviction.

### Facts and Travel

In October of 2008, defendant and her boyfriend, Joseph Vaillancourt (Vaillancourt), rented a house at 5 Hillside Drive (Hillside Drive) in Exeter, Rhode Island.  The house was owned by Randy Randall.  About a month later, sometime in November 2008, defendant met Mark Belenkii (Belenkii) at Saudin Hodzic's (Hodzic) Arlington, Massachusetts residence.  Belenkii, an enterprising individual and Russian immigrant, was operating a transportation

business and laundromat, working as a real estate agent, and trafficking in hundreds of pounds of marijuana that was imported from Canada, to be distributed in the Boston area. After the events of this case unfolded and before defendant's trial, Belenkii entered into a cooperation agreement with the United States Attorney's Office. Thereafter, at trial, Belenkii testified that he went to Hodzic's residence in November 2008 to meet with defendant, along with John Belanger (Belanger), Hodzic, and a man named "Joe;" the purpose of that meeting was to discuss "the house in Rhode Island where a larger type of a grow operation could take place or potentially take place." Belenkii also testified that, at this meeting, Hodzic explained to defendant and those present the growing process and the approximate yield per plant.[1] According to Belenkii, defendant stated that the house's well would need to be fixed in order to facilitate a bigger operation.

He further testified that in December 2008, there was another meeting—this time attended by defendant, Belanger, and Belenkii in order to discuss the marijuana operation. Several weeks later, Belenkii and Hodzic purchased supplies and met defendant in Attleboro, Massachusetts. The supplies were loaded in defendant's car, and defendant and Hodzic set off for Rhode Island.

In February 2009, Belenkii and Hodzic drove to Rhode Island with equipment for the grow operation, where they met defendant and "Joe" in West Greenwich and followed them to Hillside Drive. At defendant's direction, Hodzic and Belenkii deposited the equipment in the basement. The defendant had one of two keys to the basement door. While in the basement,

---

[1] United States Drug Enforcement Administration Agent James McCormack (Agent McCormack) estimated that each of the 173 plants seized from Hillside Drive would produce approximately one ounce of marijuana, which would translate to a total of "a little over [ten] pounds" of marijuana. That estimation led to his "conservative" calculation that the 173 plants would yield roughly $25,000.

Hodzic and Belenkii toured the grow operation, inspecting its structures, equipment, ventilation system, grow lights, and a partition separating two grow areas. According to Belenkii, Hodzic declared that he was pleased to have "a really large place [so] he can grow more plants." When defendant informed him that she needed money for rent, Belenkii gave defendant $1,700.

After the February visit to Hillside Drive, Belenkii and defendant spoke on the phone about every other day. According to Belenkii, defendant would notify him when she needed money to pay the rent and utility bills. The defendant also informed him when the plants needed to be watered and cared for and that she intended to have Hodzic visit the house to perform those tasks. During the ensuing months, Belenkii testified that he visited Hillside Drive "[a]bout [twelve] times" and, on at least one occasion, he observed marijuana plants in the basement when defendant was present.

As the Exeter operations progressed, the Drug Enforcement Administration (DEA) was conducting an investigation into the distribution of marijuana smuggled from Canada into the United States. Belenkii's and Hodzic's enterprise fell within the purview of this investigation. At trial, DEA Special Agent Gregg Willoughby (Agent Willoughby) testified that at least thirty agents were involved in an investigation of an organization based in Canada that was smuggling high-grade marijuana into various New England states. The DEA's investigation included both actual surveillance of Belenkii and Hodzic, as well as wiretap surveillance to intercept Belenkii's phone conversations. It was during those conversations that the agents heard Belenkii and Hodzic discuss going "south"—a term that was used in connection with the Exeter address. Based on surveillance and photographs, agents placed a car registered to Hodzic's wife at Hillside Drive. A subpoena was issued to National Grid, seeking information relating to the house at Hillside Drive; the response revealed that defendant was the named subscriber and that

the electrical usage was substantially higher than that of neighboring homes on Hillside Drive.

Agent Willoughby next contacted Warwick Police Detective Robert Page (Det. Page), who was assigned to a DEA High Intensity Drug Trafficking Area Task Force. Detective Page set about obtaining a search warrant for 5 Hillside Drive. On June 16, 2009, a United States magistrate signed a search warrant for that address; and, accordingly, Det. Page and other DEA agents executed the search warrant at 6:00 a.m. on June 17, 2009.[2] Also on June 17, 2009, Belenkii was arrested during the execution of another search warrant at a Boston apartment.

Meanwhile, at Hillside Drive, police seized 173 marijuana plants, a digital scale, various pipes and implements used to smoke marijuana, a rifle, and a suitcase containing fireworks, as well as defendant's passport and employee identification badge. Three of the four vehicles parked on the property were traced to defendant and her boyfriend, Vaillancourt.[3] Two marijuana grow operations were located, one in the basement and another in a second-floor bedroom.

On February 15, 2010, a four-count criminal information was filed, charging defendant with (1) one count of possession of marijuana with the intent to deliver; (2) one count of manufacturing or cultivating marijuana; (3) one count of committing a crime of violence when armed with or having available a firearm; and (4) one count of possessing or controlling Class

---

[2] The affidavit of Det. Page, filed in support of the application for the search warrant, outlined a sweeping federal investigation into what had been identified as a large-scale marijuana trafficking operation. That investigation included extensive surveillance and wiretapping, and it revealed Belenkii as a central target of the investigation.

[3] None of the vehicles on the property had license plates at the time of the search. However, the vehicle identification number (VIN number) on a black sedan on the property indicated that the sedan was owned by defendant; the VIN numbers on a black pickup truck and a silver pickup truck both identified Vaillancourt as the owner of those vehicles. The black sedan was not registered at the time of the search, nor did the pickup trucks have current Rhode Island registrations.

"B" or Class "C" fireworks. Subsequently, on November 9, 2010, the state dismissed counts three and four, the firearm and fireworks offenses.

The defendant testified at trial. She denied any knowledge of or involvement in the marijuana grow operations. The defendant testified that she and Vaillancourt moved to Block Island on December 28, 2008 after boxing up all of their belongings at Hillside Drive. According to defendant, during her time on Block Island, she sublet the house to Hodzic. She returned to Exeter only to retrieve rent from Hodzic and pay rent to the landlord. She also testified that she knew Belenkii because he was introduced to her as Hodzic's driver; Belenkii was at "that house in Massachusetts" when defendant would travel there to collect rent from Hodzic, and defendant also saw him at Hillside Drive when she would meet Hodzic there to collect rent. The defendant denied having any conversations with Belenkii.

In the course of the five-day trial, the state presented a number of witnesses; and, at the conclusion of the state's case, defendant moved for a judgment of acquittal. That motion was denied. After presenting defendant and five witnesses, the defense rested, and defendant renewed her motion for judgment of acquittal. That motion again was denied; the trial justice indicated "that applying the correct test, * * * there is sufficient evidence so that both counts can go to the jury."

The trial justice next turned to his instructions for the jury. Before delivering the charge, however, he discussed defendant's objection to an aiding and abetting instruction and invited argument on the issue. The defendant argued that the charging document did not reference G.L. 1956 § 11-1-3, which states that "[e]very person who shall aid, assist, abet * * * or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed * * *." Moreover,

according to defendant, in cases where an aiding and abetting instruction was warranted, the accused was present at the scene of the crime. In addition, defendant argued that "constructive manufacturing or constructive cultivation" could not survive a motion for judgment of acquittal because the count charging cultivation of marijuana requires "the actual act itself." The defendant further argued that there should have been a conspiracy count or she should have been charged with "aiding and abetting as an accessory before the fact," but instead, defendant "was only charged as a principal."

The trial justice "totally disagree[d]" with defendant's argument. He quoted this Court's decision in State v. Davis, 877 A.2d 642, 648 (R.I. 2005), in support of his conclusion that "§ 11-1-3 eliminates the legal distinction between the commission of a crime as a principal and aiding and abetting another in the commission of a crime, and for this reason, defendant's manner of participation, whether as a principal or an aider or abettor, is not an element of the crime." Finally, the trial justice concluded that, under defendant's reasoning, "no one could be held culpable of the grow at issue because no one was present at the grow site on June 17, 2009. That can't be the law. I find that it's not the law."[4]

---

[4] The portion of the instructions pertinent to this Court's review of the case reads as follows:

> "I now turn to Count 2 which alleges manufacturing or cultivating marijuana. In order for you to convict the defendant, you must find that the State has proved the following elements beyond a reasonable doubt: One, that on or about the 17th day of June, 2009, the defendant manufactured or cultivated marijuana; and two, that she did so unlawfully with knowledge and intent. I instruct you that under the law, Julie Long could not legally manufacture[] or cultivate marijuana. Intent and knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind.
>
> "You may, however, infer a defendant's intent and knowledge from all of the surrounding circumstances. You may consider any statement made or act

The jury acquitted defendant of possession of marijuana with intent to deliver, but convicted her on the manufacturing and cultivating count. The defendant did not file a motion for a new trial. Thereafter, the trial justice sentenced defendant to ten years at the Adult Correctional Institutions, eighteen months to serve, the balance suspended, with probation; he also ordered defendant to perform 300 hours of community service. The defendant appealed to this Court.

The defendant advances three arguments on appeal: (1) the trial justice erred in denying

---

done by the defendant and all other facts and circumstances in evidence which may indicate the defendant's state of mind.

"A person acts knowingly and intentionally and with specific intent when she does an act deliberately and purposefully and not because of mistake or accident or other innocent reason.

"Aiding and abetting: I further instruct you that the guilt of a defendant may be established without proof that the defendant personally did every act constituting the offense charged in either of the two counts. The law provides that whoever aids, abets or assists another person to commit a crime is nonetheless criminally liable as a principal. The law holds that anyone who knowingly and willfully participates in the commission of a crime is responsible for that crime just as if he or she committed the crime alone.

"In order to convict a defendant as an aider and abettor, the State must prove that the defendant shared in the criminal intent of the principal or principals and was in some way a participant in the crime. In other words, you must find beyond a reasonable doubt that there was a community of unlawful purpose at the time the criminal act was being committed and that the defendant was, in some fashion, a knowing, willing and active participant in it.

"Thus, in order to aid and abet another to commit a crime, it is necessary that a defendant willfully associate himself or herself in some way with the criminal venture and willfully participate in it as he or she would in something he or she wishes to bring about.

"Of course you may not find Julie Long guilty under an aiding and abetting theory unless you find that every element of the offense under consideration was committed by some person or persons and that defendant Julie Long in some way participated in or assisted in its commission."

- 7 -

her motion for a judgment of acquittal as to the charge of manufacturing and cultivating marijuana because the evidence was legally insufficient to support a conviction; (2) he erred in denying her motion for judgment of acquittal as to aiding or abetting the manufacture and cultivation of marijuana because the evidence did not support that offense; and (3) the trial justice erred in providing the jury with an aiding and abetting instruction.

## Standard of Review

When passing on "a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice." State v. Lynch, 19 A.3d 51, 56 (R.I. 2011). "A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." State v. Heredia, 10 A.3d 443, 446 (R.I. 2010) (citing State v. Rodriguez, 996 A.2d 145, 148-49 (R.I. 2010)). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (quoting State v. Texieira, 944 A.2d 132, 140 (R.I. 2008)).

Meanwhile, "[t]he standard of review for jury instructions is well settled. A charge 'need only adequately cover[] the law.'" State v. Cardona, 969 A.2d 667, 674 (R.I. 2009) (quoting State v. Krushnowski, 773 A.2d 243, 246 (R.I. 2001)). "This Court examines 'the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, * * * and * * * review[s the] challenged portions * * * in the context in which they were rendered.'" Id. (quoting Krushnowski, 773 A.2d at 246). A "trial justice is bound to ensure that the jury charge 'sufficiently addresses the requested instructions and correctly states the applicable law.'" State v. Sivo, 925 A.2d 901, 913 (R.I. 2007) (quoting State v. Coleman, 909 A.2d 929, 938 (R.I. 2006)); see also State v. Delestre, 35 A.3d 886, 891 (R.I.),

- 8 -

cert. denied, 132 S. Ct. 2442 (2012) ("[W]hen we review a trial justice's challenged jury instructions, we will uphold them when they 'adequately cover the law.'" quoting State v. Ensey, 881 A.2d 81, 95 (R.I. 2005)). "[A]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Sivo, 925 A.2d at 913 (quoting Saber v. Dan Angelone Chevrolet, Inc., 811 A.2d 644, 653 (R.I. 2002)).

**Discussion**

The defendant's first assignment of error is that, based on what she contends was the insufficiency of credible evidence, the trial justice erred when he denied her motion for judgment of acquittal. According to defendant, § 21-28-1.02 "requires <u>action</u> for one to be found culpable" and "there is no evidence that [defendant] produced, prepared, or cultivated the marijuana plants growing in the basement of 5 Hillside Drive." (Emphasis added.) Further, defendant argues that the fact that she rented the property does not equate to "an inference that she actively or knowingly participated in the marijuana grow," but rather that, at most, the evidence proved only that defendant was an accessory before the fact.

Rule 29(a)(1) of the Superior Court Rules of Criminal Procedure provides, in pertinent part, that "[t]he court * * * shall order the entry of judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *." Viewing the evidence "in the light most favorable to the state" and "giving full credibility to the state's witnesses," Heredia, 10 A.3d at 446 (quoting Rodriguez, 996 A.2d at 148), we conclude that sufficient evidence existed to prove beyond a reasonable doubt defendant's participation in the "production, preparation, propagation, cultivation, compounding, or processing" of marijuana in accordance with § 21-28-1.02(27).

It is clear that Belenkii's testimony placed defendant at various meetings where the

operation and its profits were discussed; she participated in the planning and preparation for the grow operation at Hillside Drive; received money from Belenkii for rent and equipment; and managed the rent and utility payments while the operation was ongoing. In addition, defendant directed the unloading of materials and equipment at the property and had one of only two keys to the basement door. According to Belenkii, defendant spoke with him about the operation approximately every other day and was present when Belenkii and Hodzic arrived to inspect the grow; defendant was present during discussions of probable yield of the plants and the cloning process, and she indicated that she "wanted to get paid in marijuana rather than cash proceeds." Although defendant argues that Belenkii's testimony was not credible, this Court does not pass upon the credibility of witnesses in determining whether a judgment of acquittal was warranted. See Heredia, 10 A.3d at 446 (this Court "giv[es] full credibility to the state's witnesses" when reviewing a motion for judgment of acquittal, quoting Rodriguez, 996 A.2d at 148). Indeed, defendant's argument is misplaced; a challenge to the credibility of a witness properly is the subject of a motion for new trial, and none was made in this case.

The defendant also argues that "there [was] no evidence establishing [her] presence at the scene of the marijuana grow during the time period the marijuana was being cultivated." We disagree. The execution of the search warrant at 5 Hillside Drive provided evidence that demonstrated defendant's connection to the rented property. Specifically, the VIN numbers of three of the vehicles present on the property were traced back to defendant and her boyfriend; an employee identification tag and a passport—both in defendant's name—were seized from the house; photographs of defendant were found in the house; and utility bills with defendant's name on them also were seized.

Based on the foregoing, the trial justice did not err when he denied defendant's motion

for judgment of acquittal as to the charge of manufacturing and cultivating marijuana. Viewed in the light most favorable to the prosecution, as is required under the standard for a motion for judgment of acquittal, we are of the opinion there was sufficient evidence to establish defendant's guilt beyond a reasonable doubt. Therefore, the trial justice appropriately denied defendant's Rule 29 motion for judgment of acquittal.

The defendant's next argument is that the Superior Court erred in denying her motion for judgment of acquittal as to the charge of aiding and abetting the manufacture and cultivation of marijuana. The defendant argues that the evidence was not sufficient to convict her of that offense. According to defendant, she should have been charged, if at all, as an accessory before the fact. Much like her first assignment of error, this argument is grounded in defendant's insistence that the evidence failed to place her at Hillside Drive when the marijuana grow operations were underway.

To prove criminal liability for aiding and abetting a criminal act, it must be shown that "(1) 'the alleged aider and abettor share[d] in the criminal intent of the principal,' and (2) 'a community of unlawful purpose' exist[ed] between them." Willis v. Omar, 954 A.2d 126, 131 (R.I. 2008) (quoting Curtin v. Lataille, 527 A.2d 1130, 1132 (R.I. 1987)). Having viewed the evidence in the light most favorable to the prosecution, we are satisfied that the evidence was sufficient to sustain defendant's conviction and the trial justice therefore properly denied the motion for judgment of acquittal. We are satisfied that defendant's actions demonstrated a shared unlawful intent to manufacture or cultivate marijuana and, further, that a community of unlawful purpose existed between and among defendant, Belenkii, and Hodzic.

The defendant's final argument is that the trial justice erred when he instructed the jury that it could convict defendant of manufacturing or cultivating marijuana as an aider or abettor.

The defendant claims that the aiding and abetting instruction was improper because, again, she was not present at Hillside Drive and, moreover, the instruction confused the issues. We deem this argument to be without merit.

We are mindful that "[a]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Sivo, 925 A.2d at 913 (quoting Saber, 811 A.2d at 653). Section 11-1-3 provides that a person who aids or abets "another to commit any crime or offense, shall be proceeded against as principal * * * and upon conviction shall suffer the like punishment as the principal offender is subject to by this title." This Court has observed that, pursuant to § 11-1-3, the manner of participation is not an element of the crime. See Davis, 877 A.2d at 648 ("[Section] 11-1-3 eliminates the legal distinction between the commission of a crime as a principal and aiding and abetting another in the commission of a crime, and for this reason, [the] defendant's manner of participation, whether as a principal or an aider or abettor, is not an element of the crime."). "The law is well settled 'that one who aids and abets in the commission of the crime and is also present at the scene may be charged and convicted as a principal.'" Id. (quoting State v. McMaugh, 512 A.2d 824, 831 (R.I. 1986)).

Here, Belenkii's testimony demonstrates that defendant was involved in the growing process both before and after the process commenced. For example, Belenkii's testimony established that defendant was present at an initial planning meeting for the operation and, further, that she volunteered the suggestion that the well be fixed to insure a proper water supply. Belenkii also testified that defendant was present in the basement of Hillside Drive when he arrived to inspect the marijuana plants and that, once the cultivation was underway, he discussed the operation with defendant approximately every other day.

Accordingly, we agree with the state that, "as long as a jury, having been properly instructed about the alternative theories of participation, is unanimously convinced beyond a reasonable doubt that * * * [the] defendant has participated in the crime as either an aider/abettor or as a direct principal, the jury is not required also unanimously to determine the manner of [the] defendant's participation." Davis, 877 A.2d at 648.

Therefore, we are satisfied that Belenkii's testimony that defendant was at Hillside Drive on a number of occasions was sufficient to support the jury charge with respect to aiding and abetting.

Finally, we pause to acknowledge the defendant's argument that she was, at most, an accessory before the fact in this case. Significantly, defense counsel never argued that such a charge should be considered. Our "[c]ase law demonstrates that a trial justice need only instruct a jury on issues raised at trial." State v. Medeiros, 599 A.2d 723, 727 (R.I. 1991). Therefore, we hold that the trial justice did not err in excluding an instruction on aiding and abetting as an accessory before the fact.

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers in this case may be returned to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Julie Long.

**CASE NO:**      No. 2011-154-C.A.
(W2/10-103A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**   March 8, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Edwin J. Gale

**ATTORNEYS ON APPEAL:**

For State:  Christopher R. Bush
Department of Attorney General

For Defendant:  Lara E. Montecalvo
Office of the Public Defender