**Supreme Court**

No. 2014-268-C.A.

(P2/11-2668A)

State                    :

v.                    :

Curtis M. Isom.                    :


NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                :

v.            :

Curtis M. Isom.       :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on December 1, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendant, Curtis M. Isom (Isom or defendant), appeals from a judgment of conviction after a jury trial of one count of breaking and entering.  Before this Court, the defendant argues that the trial justice erred in: (1) denying his motion for a judgment of acquittal; (2) limiting the scope of his cross-examination of the state's fingerprint expert; and (3) denying his motion for a new trial.  Having carefully considered the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown, and the appeal may be decided at this time.  We affirm the judgment of the Superior Court.

### Facts and Travel

Antoinette Bryant (Bryant) initially did not notice that anything was amiss in her home. When she returned from work on the afternoon of March 28, 2011, the front door of her family's two-story condominium in Johnston, Rhode Island was unlocked, but Bryant assumed that her

daughter Essence had been careless when leaving their home that morning.[1]  The house looked as Bryant had left it; save for the unlocked door, nothing seemed out of place.  It was not until Bryant's son Jarell returned home from school and noticed that his Nintendo Wii gaming console was missing that Bryant realized that something was wrong.  Upon further inspection, Bryant discovered that the dresser drawers in her second-floor bedroom were open; her jewelry boxes and a teapot in which she stashed coins were empty; a diamond necklace and other jewelry were missing from her bedroom closet; and a computer and digital coin bank were nowhere to be found.  Essence, now home from school, noticed that her brother Oginga's bedroom door was ajar, even though the door usually remained closed when he was away at college.  Looking inside Oginga's bedroom, located at the ground level, Essence found the window open and the bed pushed out from its usual spot against the window.  Bryant called 9-1-1 and reported a break-in.

Several officers from the Johnston police department responded to the dispatch.  Detective Raymond Peters (Det. Peters) of the department's forensic unit took photographs and dusted the scene for fingerprints.  The detective recovered fingerprint evidence from the window in Oginga's bedroom, Bryant's jewelry box, the door handle to her bedroom closet, and from other areas throughout the home.  For the purpose of determining which fingerprints belonged to persons rightfully on the premises—and to eliminate them from the investigation—Det. Peters also obtained fingerprints from Bryant and her daughter Imani.  Photographs of fingerprint evidence were sent to the State of Rhode Island Crime Laboratory at the University of Rhode

---

[1] For the purpose of clarity, we refer to Bryant's children by their first names.  We intend no disrespect.

Island (crime lab) where they were analyzed by Edward Downing, Jr. (Downing), a fingerprint expert and fifteen-year veteran of the crime lab.

Downing determined that four of the twenty images were clear enough to warrant greater attention. After concluding that certain fingerprints extracted from Oginga's bedroom window came from an unknown source, he searched a database known as the Automated Fingerprint Identification System (AFIS) to identify a potential match. From the three and a half million fingerprints contained in the database, Downing's search returned the name "Curtis M. Isom," born on January 4, 1959, as the closest potential match.[2] Downing then manually compared the left index fingerprint exemplar displayed on a fingerprint card attributed to "Curtis M. Isom" side-by-side with the photograph of the fingerprint from the window. By way of expert testimony, Downing opined that the exemplar and the latent fingerprint from the window originated from a common source. He also concluded that another latent fingerprint—a left thumbprint—extracted from Bryant's jewelry box matched another exemplar on the AFIS-generated fingerprint card ascribed to "Curtis M. Isom."[3]

---

[2] In addition to listing "Curtis M. Isom" as the number-one possible match, AFIS also returned forty-nine other exemplars from fingerprint cards, taken from other individuals, as possible matches.

[3] Detective Peters testified at trial that he did not record which of the four fingerprints were recovered from which item. But based on his recollection, Det. Peters testified that the photograph he marked as "35"—which contained an image of a fingerprint that Downing identified as a likely match to defendant's left thumbprint—came from the jewelry box. He further recalled that the image labeled "52" was a photograph of the fingerprint he found on the window, and Downing testified that that fingerprint was consistent with defendant's left index fingerprint. As for the remaining two fingerprints prompting further inspection by Downing, Det. Peters testified at trial that they came from the door handle to Bryant's bedroom closet and the television in the living room. Downing determined that one fingerprint belonged to Imani and the other originated from an unknown source. Neither he nor Det. Peters indicated at trial which fingerprint came from which item.

Johnston police detectives shared the results with Bryant and asked her if she knew a "Curtis Isom." Indeed, she did. A man with that name—defendant—is the father of Bryant's nephew, Marcus. The defendant also has the same date of birth as that listed on the fingerprint card: January 4, 1959.[4] Four months earlier, in December 2010, defendant and Marcus had visited Bryant's home. Although defendant had visited Bryant and her family in their previous apartment, it was the first time he had been to this particular residence. The visit lasted no more than fifteen minutes, during which defendant remained in the foyer and in the living room. To Bryant's knowledge, defendant had not returned since.

The defendant subsequently was charged with breaking and entering in violation of G.L. 1956 § 11-8-2. Trial was held in the Providence County Superior Court on January 13 and 15, 2014. The state presented several witnesses, including Oginga, Bryant, Det. Peters, and Downing. Because Downing was the state's key witness and because defendant argues on appeal that the trial justice erred by restricting the scope of his cross-examination of Downing, we recount his testimony in some detail.

During the state's direct examination of Downing, the fingerprint expert explained the methodology he employed when comparing known and latent prints.[5] Downing testified that his practice is to inspect the fingerprints initially for "basically similar shapes[ and] the general flow of [the] lines," and then focus on "the more minute details," such as "ending ridges, bifurcations, or small dots." He explained that ending ridges are noncontinuous lines within a fingerprint that break or end abruptly. Downing further described bifurcation on cross-examination as "one

---

[4] The defendant's birthdate was not in dispute at trial.

[5] A latent fingerprint is a fingerprint found at the crime scene. See, e.g., State v. Crawford, 441 So. 2d 813, 816 n.3 (La. Ct. App. 1983).

ridge that's running for a short time [and] then splits into two separate lines or two separate ridges."

On cross-examination, defense counsel asked the fingerprint expert several questions about the general reliability of fingerprint identification and the procedures he employed in making his identification. Counsel then directed Downing's attention to an image of the fingerprint found on the jewelry box—specifically, a copy of the photograph on which Downing had based his identification. Downing testified that a mark within that fingerprint "appears to be a bifurcation or an ending ridge. You can't always tell which is which." The following exchange ensued:

"Q      * * * [I]s it possible that in one [fingerprint] impression, * * * what appears as a bifurcation or ridge ending may actually be something else in an inked print?

"A      Yes, sir.

"Q      * * * [A]nd it's important when you're looking at a latent or partial print to know whether you are looking at a bifurcation or ridge ending, correct?

"A      It would be of assistance, yes.

"* * *

"Q      But if you * * * can't tell whether a characteristic is a ridge ending or a bifurcation in the latent, there is a chance of making a mistake, right?"

The court sustained the state's objection to the question. Defense counsel then asked: "Is it possible you could make a mistake because you can't tell whether or not something is a ridge ending or a bifurcation?" After the court again sustained the state's objection, defense counsel pursued a new line of questioning. At another point during cross-examination, the defense sought to ask Downing about the impact of a recent high-profile investigation conducted by the

Federal Bureau of Investigation (FBI) on the field of fingerprint analysis. Sustaining the state's objection, the trial justice disallowed the question.

Also on cross-examination, Downing acknowledged that his analysis was limited to comparing the AFIS card attributed to "Curtis M. Isom" with the photograph of the latent fingerprint found in the Bryant home. He had not been provided with fingerprints obtained from defendant after his arrest.

The state also presented former Det. Mary Ann Pimental (Det. Pimental) of the Johnston police department, who testified that she had arraigned a man named Curtis Isom in the District Court on July 13, 2011, for the crime on trial and that his birthdate was January 4, 1959.[6] Detective Pimental indicated that she had ordered that personnel from the Bureau of Criminal Identification take defendant's fingerprints after the arraignment, but she had no personal knowledge as to whether this task was completed. At trial, the state did not introduce fingerprints taken from defendant after his arrest in July 2011, nor did any witness with personal knowledge testify that the fingerprints attributed to "Curtis M. Isom" belonged to defendant.[7]

After the state rested, defendant moved for a judgment of acquittal, which the trial justice denied. The defendant did not present a case. The jury returned a verdict of guilty, and the trial justice subsequently denied defendant's motion for a new trial. The defendant was sentenced to fifteen years at the Adult Correctional Institutions, with five years to serve and ten years suspended, with probation. Based on the conviction in this case, the defendant also was adjudged to be a habitual offender in accordance with G.L. 1956 § 12-19-21. Consequently, the

---

[6] When asked if that "Curtis Isom" was in the courtroom, Det. Pimental testified that "[t]here is a gentleman in the courtroom that is familiar to me * * *. Yes. He is sitting there at the defense table with a turtleneck on."

[7] Evidence of defendant's middle initial was not offered at trial, and the jury verdict form identified him as "Curtis Isom."

trial justice sentenced defendant to fifteen years, with five nonparolable years to serve and ten years suspended with probation, to be served consecutively to the sentence for the breaking-and-entering conviction. This timely appeal followed.

**Discussion**

### I. Denial of Motion for a Judgment of Acquittal

On appeal, defendant first claims that the trial justice erred in denying his motion for a judgment of acquittal. Our review of the denial of a motion for a judgment of acquittal is governed by the same standard applied by the trial justice. State v. Rodriguez, 996 A.2d 145, 148 (R.I. 2010). Accordingly, this Court "must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." Id. (quoting State v. Ros, 973 A.2d 1148, 1159 (R.I. 2009)). The defendant may prevail on a motion for a judgment of acquittal "only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." State v. Armour, 110 A.3d 1195, 1203 (R.I. 2015) (quoting State v. Long, 61 A.3d 439, 445 (R.I. 2013)). The case against the defendant will survive, however, upon the determination that "a reasonable juror could find the defendant guilty beyond a reasonable doubt." Id. (quoting Long, 61 A.3d at 445). As we previously have held, "circumstantial evidence, including fingerprint evidence, may be sufficient to support a conviction * * * 'as long as the totality of the circumstantial evidence presented to the finder of fact constitutes proof of guilt beyond a reasonable doubt.'" State v. Rodriguez, 798 A.2d 435, 437 (R.I. 2002) (quoting State v. Otero, 788 A.2d 469, 473 (R.I. 2002)).

The gravamen of defendant's appeal from the denial of his motion for a judgment of acquittal is his contention that the state failed to establish "that the AFIS-generated exemplars to

which the [latent fingerprints] were matched[] actually belonged to * * * Isom" and that the absence of such evidence amounts to a "gap in proof." In support of this claim, defendant points to cross-examination testimony from Downing, the fingerprint expert, that he lacked personal knowledge of whether the fingerprints on the fingerprint card returned from AFIS were in fact defendant's fingerprints. The defendant further cites the acknowledgment by Downing that neither he nor the police had obtained fingerprints from defendant during the course of the investigation. These arguments do not help defendant, however, because they relate to the weight of the evidence and not its legal sufficiency.

In Sansom v. State, 562 N.E.2d 58 (Ind. Ct. App. 1990), a similar issue arose when the defendant in that case argued that there was insufficient evidence to sustain his conviction of burglary because the police had matched latent fingerprints recovered from the crime scene only to a fingerprint card on file that was attributed to a man with the same name and birthdate as the defendant. Id. at 59, 60. The prosecution did not present direct evidence that the fingerprints on the card had belonged to the defendant. Id. at 59. Other information contained on the card, including hair and eye color, height, place of birth, and distinctive marks, also closely matched the defendant. Id. The court concluded that, based on the similarities, the jury could reasonably infer that the exemplars on the fingerprint card belonged to the defendant. Id. at 60.

In this case, there was evidence that latent fingerprints found both on the window—the suspected point of entry—and the jewelry box from which items were missing matched an exemplar attributed to one "Curtis M. Isom" with a birthdate of January 4, 1959. The defendant in this case was named Curtis Isom, and the state introduced evidence that he had the same date of birth. Further, unlike in Sansom, there was testimony that defendant was known to Bryant and her family and that he previously had been in the home, but not in the area where the latent

fingerprints were found. From the facts that defendant, Curtis Isom, was known to the complainant in this case, had been in the home on a previous occasion, and had the same date of birth as the "Curtis M. Isom" whose fingerprints matched those recovered at the scene, a reasonable jury could conclude that defendant was the perpetrator of the crime on trial.

Although the investigation by the Johnston police department could have been more comprehensive—including the establishment of a link between defendant's fingerprints and the latent fingerprints—we cannot conclude that the evidence was legally insufficient to give rise to a judgment of acquittal. Viewing the evidence—the identical date of birth and defendant's connection to the home—in the light most favorable to the state, we are satisfied that there was sufficient evidence to connect the exemplars from the fingerprint card to defendant.

## II. Cross-Examination of Fingerprint Expert

The defendant also argues on appeal that the court deprived him of his right to a full and fair cross-examination of Downing. The right of a criminal defendant to be confronted by witnesses against him is ingrained both within the Sixth Amendment to the United States Constitution[8] and the Declaration of Rights, article 1, section 10 of the Rhode Island Constitution. "Embodied in this guarantee is a defendant's right to cross-examine the prosecution's witnesses * * *." State v. Parillo, 480 A.2d 1349, 1356 (R.I. 1984) (quoting State v. Freeman, 473 A.2d 1149, 1153 (R.I. 1984)). However, "the right to cross-examination is not unlimited and does not include an absolute right to ask any and every question that the defendant may desire." State v. Werner, 831 A.2d 183, 209 (R.I. 2003). "Once there has been 'sufficient cross-examination to satisfy a defendant's constitutional confrontation rights,'" State v. Manning, 973 A.2d 524, 531 (R.I. 2009) (quoting State v. Brown, 709 A.2d 465, 473 (R.I.

---

[8] See Pointer v. Texas, 380 U.S. 400, 403 (1965) (incorporating the Sixth Amendment to the states through the Due Process Clause of the Fourteenth Amendment).

1998)), the trial justice may, in the exercise of sound discretion, "limit cross-examination on the basis of concerns of witness harassment, jury prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." State v. Wiley, 676 A.2d 321, 324 (R.I. 1996); see also Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). This Court will not "disturb such a limitation absent a clear abuse of discretion 'and then only when such abuse constitutes prejudicial error.'" Brown, 709 A.2d at 473 (quoting State v. Anthony, 422 A.2d 921, 924 (R.I. 1980)).

The defendant attacks the restriction of his cross-examination of Downing on two fronts. First, he argues that the trial justice erroneously prevented him from asking the fingerprint expert about possible inaccuracies that could arise from misidentifying ridge endings and bifurcations. Specifically, the court did not permit him to ask about the "chance of making a mistake" or whether it is possible "you could make a mistake." The trial justice sustained the state's question because it called for speculation, and it was within his sound discretion to do so. See, e.g., State v. Rivera, 987 A.2d 887, 906 (R.I. 2010) (finding no abuse of discretion when trial court limited question that called for speculation).

The defendant wages a second line of attack on the refusal of the trial justice to allow a question about the impact of a recent high-profile FBI investigation on procedures employed in the fingerprint-analysis field. Defense counsel had asked Downing, "Are you familiar with what is known as the Mayfield case?," and the fingerprint expert answered affirmatively. The trial justice sustained the state's objection to the next question: "And evaluating and guarding against

the errors that the FBI made in the Mayfield case * * * [h]as been a driving force in the fingerprint community for years, right?"[9]

According to defendant, because of Mayfield, there have been major reforms in the field of fingerprint analysis, to the extent that he should have been entitled to inquire whether Downing followed post-Mayfield procedures. However, the impact of a particular FBI investigation on the entire field of fingerprint analysis was irrelevant to the prosecution in this case. Neither the errors made by the FBI nor the historical evolution of the fingerprint-analysis field had bearing on the methodology followed in this particular case or on Downing's conclusion that the latent and known fingerprints originated from the same source. See, e.g., Werner, 831 A.2d at 209, 210 (affirming trial justice's decision to preclude, on the grounds of relevance, the defendant's questions on cross-examination regarding procedures employed by the police department when booking another individual).

We further reject defendant's assertion that the preclusion of this line of questioning interfered with his attempts to impeach the state's star witness. To the contrary, defendant was afforded substantial leeway to question Downing about the overall reliability of fingerprint evidence and the procedures he followed. The defendant elicited testimony from Downing on cross-examination that fingerprint analysis is not foolproof and that "[e]rrors have occurred in

---

[9] The "Mayfield case" arose in 2004 when Spanish investigators recovered latent fingerprints from a bag containing explosive detonators, which was found near the site of a bombing in Madrid, Spain. Mayfield v. United States, 599 F.3d 964, 966 (9th Cir. 2010). A search of the FBI's fingerprint database returned the fingerprints of Brandon Mayfield, an American Muslim attorney, and nineteen other individuals as possible matches. Id. Multiple fingerprint specialists concluded that a latent fingerprint matched an exemplar originating from Mayfield, which led FBI agents to assert in an affidavit that they had made a "100% positive identification." Id. at 966, 967. However, the Spanish investigation revealed that the FBI had been incorrect; the fingerprints instead came from an Algerian national. Id. at 967.

the past." Accordingly, the trial justice did not abuse his discretion in restricting defendant's line of questioning.

### III. Denial of Motion for a New Trial

The defendant's final assignment of error is the denial of his motion for a new trial.[10] In support of his argument on appeal, defendant points to the lack of direct evidence tying the exemplars found on the fingerprint card to him, purportedly inconsistent testimony between Bryant and Oginga, and the likelihood that a man of his age could climb through the basement window in the manner the perpetrator purportedly had. The defendant also attacks the quality of the latent fingerprints, the failure of the police to document the items from which they were obtained, and the overall reliability of fingerprint evidence.

When passing on a motion for a new trial based on the weight of the evidence, the trial justice "sits as the legendary thirteenth juror[,] and, in light of the charge to the jury, must exercise his or her independent judgment in weighing the evidence and assessing the credibility of the witnesses." State v. Clark, 974 A.2d 558, 569 (R.I. 2009). The motion must be denied "[i]f the trial justice agrees with the jury's verdict or finds that the evidence is such that reasonable minds could differ as to the outcome * * *." Id. This Court will give "great weight"

---

[10] We note that defense counsel twice unequivocally stated at the hearing on the motion for a new trial that he based the motion on a sufficiency-of-the-evidence argument. On appeal, defendant contends that his attorney was mistaken and should have stated that he was moving for a new trial based both on the weight of the evidence and its sufficiency. The defendant asserts that, notwithstanding his attorney's error, he argued both legal sufficiency and weight in the court below, and that the trial justice addressed both in his decision. Because the trial justice indeed did discuss the weight of the evidence among his findings in denying the motion for a new trial and because the state had adequate opportunity to respond to the weight-of-the-evidence argument at the time it was presented below, we are satisfied that this issue was preserved for our review. Cf. State v. Burke, 522 A.2d 725, 731 (R.I. 1987) (noting that the reason for deeming issues unpreserved is to "serve judicial economy by encouraging resolution of issues at the trial level * * * [and to] promote[] fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised").

to the ruling as long as the trial justice sufficiently explained his or her rationale for denying the motion. Id.

In ruling on the motion, the trial justice set forth his reasons for denying the new trial. He credited the testimony of Bryant, Oginga, Downing, and Det. Peters, and, unlike the defendant, found Bryant's and Oginga's testimony to be mutually corroborative. After painstakingly recounting the evidence adduced at trial, the trial justice stated that the open window and position of the bed in Oginga's bedroom led to the "inescapable conclusion" that the perpetrator had gained entry through that ground-floor window. The trial justice indicated that he was "satisfied" that the latent fingerprints on the jewelry box belonged to the defendant, and he concluded that the existence of such fingerprints "establish beyond a reasonable doubt that it was the defendant who was the individual who broke into her apartment on March 28, 2011." We are of the opinion that the trial justice performed the requisite analysis and provided an adequate rationale for denying the defendant's motion for a new trial. We discern no grounds for disturbing that decision.

**Conclusion**

Accordingly, we affirm the judgment of conviction of the Superior Court and return the papers to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       State v. Curtis M. Isom.

**CASE NO:**              No. 2014-268-C.A.
                          (P2/11-2668A)

**COURT:**                Supreme Court

**DATE OPINION FILED:**   March 15, 2016

**JUSTICES:**             Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**           Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                          Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

                          For State:   Christopher R. Bush
                                        Department of Attorney General

                          For Defendant:  Catherine Gibran
                                           Office of the Public Defender