July 26, 2023

**Supreme Court**

No. 2020-229-C.A.
(P2/17-3050A)

State      :

  v.      :

Mitchell Savard.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State               :

v.               :

Mitchell Savard.       :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** The defendant, Mitchell Savard (defendant or Mr. Savard), appeals from a judgment of conviction following a jury trial at which he was found guilty of operating a vehicle in reckless disregard of the safety of others, death resulting; and operating a vehicle in reckless disregard of the safety of others, personal injury resulting. On appeal, Mr. Savard argues that the trial justice erred (1) in denying his motion for a new trial on the basis that the weight of the evidence did not support his conviction and (2) by admitting evidence from an electronic data recovery system obtained from one of the vehicles involved in the automobile collision. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

## Facts and Procedural History

We recite the following summary of relevant facts, which appear in the record of the proceedings in Superior Court. This matter arises out of a motor vehicle collision that occurred on Interstate Route 295 northbound in Johnston on the morning of Thursday, March 30, 2017. The vehicles involved included a sedan driven by Mr. Savard; a flatbed tow truck driven by Mr. Trevor Armstrong (Mr. Armstrong); and a box truck driven by Mr. Erik Salazar (Mr. Salazar) and in which Mr. Andy Salgado (Mr. Salgado) was a passenger.

The initial state police investigation revealed that the collision occurred through a chain reaction. Specifically, officers learned that Mr. Savard appeared to have slowed his vehicle in the center lane of travel, causing the tow truck immediately behind him and the box truck behind it to do the same. However, neither the tow truck nor the box truck was able to slow down before the box truck hit the tow truck and the tow truck hit Mr. Savard's vehicle. As a result of the injuries that Mr. Salgado and Mr. Salazar sustained during the collision, first responders transported them to the Rhode Island Hospital, where Mr. Salazar later died.

On October 30, 2017, the state filed a three-count information charging Mr. Savard with operating a vehicle in reckless disregard of the safety of others, resulting in the death of Mr. Salazar in violation of G.L. 1956 § 31-27-1; operating a vehicle in reckless disregard of the safety of others, resulting in the serious bodily injury of

Mr. Salgado in violation of § 31-27-1.1; and operating a vehicle in reckless disregard of the safety of others resulting in the physical injury of Mr. Armstrong pursuant to § 31-27-1.2.[1] At Mr. Savard's trial, the state offered evidence from multiple drivers in the vicinity of the collision; Mr. Richard Till (Mr. Till), a coworker of Mr. Armstrong who was speaking with him on the phone during the collision; Mr. Bruce McNally (Mr. McNally), an accident reconstruction expert; and two state police officers who investigated the collision, including the officer in charge of the Collision Reconstruction Unit of the Rhode Island State Police.

The drivers present in the vicinity of the collision testified largely in a consistent fashion, with no single witness having observed the entire sequence of events leading to the collision. Notably, Ms. Heather Constantine (Ms. Constantine) testified that, from her vehicle, she observed Mr. Savard's vehicle at a complete stop in the center lane of the highway and the tow truck slowing down and eventually coming to a complete stop. Shortly after Mr. Savard stopped his vehicle, she observed an explosion of debris in her rear-view mirror. Ms. Constantine further testified that she did not observe any objects on the highway or adverse weather conditions that would have prompted any vehicles on the highway to slow down or to stop.

---

[1] Prior to Mr. Savard's trial, Mr. Armstrong passed away in a manner unrelated to this case. Thereafter, the state dismissed count three of the information pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

With respect to the events that took place immediately after the collision, Ms. Heather Meunier testified that she exited her vehicle after the collision and approached Mr. Savard in an effort to provide assistance. She explained that, after she approached Mr. Savard's vehicle, he stated that the tow truck had cut him off. She further testified that she then attempted to assist Mr. Armstrong in his tow truck. She also said that she did not observe any signs that Mr. Armstrong was intoxicated.

Mr. Till testified about his phone conversation with Mr. Armstrong during the relevant period. He stated that Mr. Armstrong complained to him twice about an individual slamming on the brakes in front of him, potentially in an effort to antagonize him. After the collision, Mr. Till, Mr. Armstrong, and their employer traveled to the state police barracks together so that Mr. Till could provide a witness statement. However, despite the fact that these three individuals traveled to the state police barracks together, one of the investigating officers testified that Mr. Till denied that he had communicated with Mr. Armstrong after the collision and before this interview.

The state also called Mr. McNally as an expert to provide testimony concerning the electronic data recovery system in Mr. Armstrong's tow truck. Mr. McNally testified that after reviewing the hard brake events collected by the system, he determined that the tow truck reduced its speed from 46 to 0 miles per hour in a four-second span. Ultimately, the data collected by the recovery device led Mr.

McNally to conclude that Mr. Armstrong applied the tow truck's brakes multiple times in quick succession before coming to a complete stop. The data also supported Mr. McNally's conclusion that, after the tow truck came to a stop, the box truck struck the tow truck from behind.

Finally, the state called two officers who investigated the collision. Trooper David Wilson testified that when he arrived at the scene, he spoke with Mr. Savard, who recounted the following: He passed the tow truck on the highway and, through his rear-view mirror, observed Mr. Armstrong swerving and lying down as if he was falling asleep due to intoxication. Mr. Savard further explained that, after coming to this realization, he decided to move in front of Mr. Armstrong's vehicle and to slow down in front of him. Trooper Wilson testified that when he asked Mr. Savard to elaborate on his reasoning for this decision, Mr. Savard became flustered and was ultimately unable to so. He also testified that Mr. Armstrong did not appear intoxicated.

Sergeant Jeffrey L'Heureux, the officer in charge of the Collision Reconstruction Unit at the Rhode Island State Police, also responded to the scene, where he observed the aftermath of the collision and considered Mr. Savard's explanation, as relayed by Trooper Wilson. Based on his observations of the scene and Mr. Savard's explanation, Sgt. L'Heureux began to suspect that the events leading to this collision indicated that it was not a typical car accident. Sergeant

L'Heureux conducted an investigation, performed an accident reconstruction, and determined that both Mr. Savard's vehicle and the tow truck were stopped or nearly stopped when the box truck hit the tow truck.

Similar to the other witnesses, Sgt. L'Heureux did not find evidence to suggest that Mr. Savard had stopped his vehicle due to obstacles in the road or adverse weather. Sergeant L'Heureux testified that his investigation ultimately led him to conclude that Mr. Savard's decision to stop his vehicle in close proximity to the tow truck was the only way this collision could have occurred. He further concluded that Mr. Savard's statement to Trooper Wilson was inconsistent with his own findings. Unrelated to his expert testimony, Sgt. L'Heureux also testified on cross-examination that he interviewed Mr. Till at the state police barracks. He stated that Mr. Till denied that he had communicated with Mr. Armstrong during the period after the collision and before he provided his witness statement to the police.

At the close of the state's case, Mr. Savard rested without presenting evidence. The jury thereafter returned a guilty verdict on both counts, and Mr. Savard filed a motion for a new trial on the basis that the verdict was against the weight of the evidence. On January 3, 2020, the Superior Court heard Mr. Savard's motion for a new trial, along with an unrelated bail violation. The trial justice issued a bench decision denying Mr. Savard's motion for a new trial and addressed a separate, handwritten document that he had presented to the trial justice at an earlier hearing.

The trial justice subsequently sentenced Mr. Savard to ten years on count one, five years to serve, five years suspended, with probation, in addition to suspending his driver's license for three years upon his release. Additionally, the trial justice sentenced Mr. Savard to a concurrent term of five years suspended, with probation, on count two and ordered that he attend anger-management classes at the ACI. Mr. Savard filed a premature but timely notice of appeal on February 24, 2020, and the Superior Court entered a judgment of conviction on June 1, 2021.[2]

We consider whether the trial justice (1) erred in denying Mr. Savard's motion for a new trial based on the weight of the evidence and (2) erroneously admitted evidence from the electronic data recovery system found in the tow truck as evidence of Mr. Savard's guilt.

## Motion for a New Trial

When a trial justice analyzes a motion for a new trial, she or he must "evaluate the evidence with reference to the jury instructions; independently assess both witness credibility and the weight of the evidence; and resolve whether she or he would have come to the same conclusion as the jury." *State v. Valdez*, 267 A.3d 638, 644 (R.I. 2022). "After conducting this independent analysis, the trial justice should deny the motion for a new trial if she or he 'agrees with the jury's verdict or if the

___

[2] Pursuant to Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure, this Court treats a defendant's premature notice of appeal as if it were timely filed.

evidence is such that reasonable minds could differ as to the outcome[.]'" *Id.* (quoting *State v. Otero*, 788 A.2d 469, 472 (R.I. 2002)). "However, where the trial justice disagrees with the jury's verdict, she or he must conduct further analysis 'to determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice.'" *Id*. (quoting *State v. Tabora*, 198 A.3d 516, 519 (R.I. 2019)). If the trial justice determines that the verdict meets this standard, she or he may grant the defendant's motion for a new trial. *Id*.

This Court reviews a Superior Court justice's denial of a motion for a new trial with great deference. *Valdez*, 267 A.3d at 644. We do so because the trial justice is in an ideal position to evaluate the facts and judge the credibility of the witnesses. *Id*. "We consider whether the trial justice, acting as the thirteenth juror, exercised independent judgment in analyzing the evidence presented." *Id*. at 645. "If our review reveals that 'the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, [the] decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong.'" *Id*. (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I. 2004)).

This Court does not require the trial court to refer to all of the evidence in support of its decision. *Valdez*, 267 A.3d at 645. Instead, the trial justice "need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has

applied the appropriate standards." *Id.* (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994)). Additionally, the defendant must demonstrate that the trial justice failed to apply these standards.[3] *Id.*

Our review of the record in this case reveals that the trial justice conducted a proper analysis of Mr. Savard's motion. The trial justice found ample credible evidence in support of the jury's verdict and took no issue with its conclusion.

More specifically, the trial justice assessed the evidence in light of the jury instructions regarding the charges against Mr. Savard and determined that the sole issue was whether his conduct rose to the level of recklessness. The trial justice noted that the state was required to demonstrate that Mr. Savard must have known, or should have understood, that his driving created an unreasonable risk of harm. In support of her finding that Mr. Savard engaged in reckless conduct, the trial justice independently assessed the credibility and weight of the numerous witnesses' testimony and their unanimity regarding the unremarkable driving conditions on the day of the collision. She highlighted Ms. Constantine's testimony regarding her observations of Mr. Savard's driving: He radically reduced the speed of his vehicle in the middle of traffic on the highway. She also credited Mr. McNally's expert

---

[3] Before this Court, Mr. Savard argues that he is entitled to a judgment remanding this matter for a new trial. However, we wish to clarify that the appropriate remedy in this context would be to remand this proceeding to the Superior Court for reconsideration of the motion for a new trial, as opposed to a new trial itself. *See State v. Luanglath*, 749 A.2d 1, 6 (R.I. 2000).

testimony explaining that the tow truck engaged in a series of rapid stops just prior to the collision; she noted his thorough and painstaking analysis of the data from the tow truck and acknowledged that his testimony served as a vital aspect of the state's argument.

Further, the trial justice discredited Mr. Till's testimony, wherein he recounted his telephone conversation with Mr. Armstrong leading up to and during the collision, because she concluded that he lied to the investigating officers about not speaking with Mr. Armstrong prior to providing a witness statement at the state police barracks. However, the trial justice also found that Mr. Savard's on-scene explanation to Trooper Wilson about the circumstances of the collision was false, inaccurate, and lacking in credibility. She noted the absence of any evidence suggesting Mr. Armstrong's impairment and further noted the complete absence of evidence supporting Mr. Savard's explanation that Mr. Armstrong operated his vehicle in an unsafe manner. In light of this comprehensive analysis, we conclude that the trial justice applied the appropriate standard and properly considered the record evidence in determining that she agreed with the jury's verdict.

Notwithstanding the trial justice's proper application of the three-part test, Mr. Savard asks this Court to reverse the trial justice's ruling because, he argues, the trial justice failed to adequately perform her role as the thirteenth juror and instead developed and displayed significant disdain for him. He contends that the trial

justice developed this disdain throughout the duration of the trial, and that it compromised her ability to weigh the evidence regarding Mr. Savard's credibility. As support for this contention, Mr. Savard refers to comments by the trial justice, made during the hearing on the motion for a new trial, that Mr. Savard had a habit of thinking he was smarter than everyone else, and that this habit harmed his case. Mr. Savard also directs this Court to comments the trial justice made when addressing the handwritten document that he presented to her at an earlier hearing. We find Mr. Savard's arguments unpersuasive.

While the trial justice remarked that Mr. Savard thought that he was smarter than everyone, our review of the transcript reveals that the remark did not signal a deviation from her independent analysis of the evidence presented at trial. To the contrary, when viewed in context, it is clear that the trial justice made the remark when she was discussing the believability of Mr. Savard's on-scene statement to Trooper Wilson. Although she credited defendant with being flustered after the collision, she concluded that his explanation for slowing down in front of Mr. Armstrong was both illogical and inconsistent with the evidence presented at trial.

Similarly, our review of the transcript reveals that the trial justice's comments when addressing Mr. Savard's handwritten document do not establish that the trial justice failed to assess the evidence as an impartial factfinder. During the hearing

on the motion for a new trial, the trial justice made the following comments regarding Mr. Savard's handwritten document:

> "I want to put on the record as well, if you'll bear with me a second, I'll find it -- when we were last here on Mr. Savard's violation of bail, he insisted that the Court look at the document that he had given her. I have made it part of the court file, copies were given to both State's counsel as well as your attorney, and it really goes more toward the reasons why you think a new trial should be granted. You're represented by counsel so it's not appropriate to submit your own documents, but you did so nonetheless. And I did look at them. If anything, I would suggest that whatever arguments you may think you have, go more for an application for post-conviction relief. But just so we can shut that down as well, I want to address a couple of them because I think they're unfair and unwarranted and I think they need to be addressed. You start out first by indicating that one of the reasons you think you should be granted a new trial is that you didn't have competent representation. I would argue that the Rhode Island Public Defender's office has thoroughly learned the word 'vigorous.' It is insulting. It is inappropriate. And in some respects it is just untrue."

When viewed in context, it is clear that the trial justice discussed the circumstances surrounding Mr. Savard's handwritten document after she finished ruling on the motion for a new trial. Moreover, her comments, though stern and disapproving of Mr. Savard's criticism of the performance by his trial counsel, do not reasonably evince prejudice against Mr. Savard or impartiality in how she considered the evidence presented at trial. *See Cavanagh v. Cavanagh*, 118 R.I. 608, 621-22, 375 A.2d 911, 917-18 (1977).

This Court is satisfied from our review of the record that the trial justice exercised her independent judgment, did not overlook or misconceive the testimony before her, and provided adequate reasons supporting her denial of Mr. Savard's motion for a new trial based on the weight of the evidence. Therefore, we conclude that the trial justice did not err in denying the motion for a new trial.

## Admissibility of Evidence

Mr. Savard argues that this Court should vacate the trial justice's decision because she erroneously admitted testimony about, and data from, the tow truck's electronic data recovery system. Specifically, Mr. Savard takes issue with Mr. McNally's qualifications and ability to provide expert testimony regarding the "novel" science of electronic data recovery systems in automobiles, as well as with the fact that this Court has not previously analyzed the veracity of this technology. However, Mr. Savard failed to raise this argument before the trial justice during his motion for a new trial; it is therefore waived. *See State v. Jimenez*, 276 A.3d 1258, 1273 n.7 (R.I. 2022) ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.") (quoting *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008)). Moreover, the fact that a litigant has failed to challenge an issue in this jurisdiction does not create a novel issue for the purposes of the raise-or-waive rule. *See State v. Mohapatra*, 880 A.2d 802, 810 (R.I. 2005).

## Conclusion

Based on the foregoing, we affirm the judgment of conviction of the Superior Court and remand the record in this case.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Mitchell Savard. |
| **Case Number** | No. 2020-229-C.A. (P2/17-3050A) |
| **Date Opinion Filed** | July 26, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General |
| | For Defendant:<br><br>Carl J. Ricci, Esq. |